

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00108-CV

**IN THE INTEREST OF M.G.N.** and A.C.N., Minor Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-17947
Honorable Antonia Arteaga, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  July 29, 2015

AFFIRMED

This is a child custody modification suit.  On remand from the Texas Supreme Court, we must determine whether the trial court abused its discretion (1) when it found an impaneled juror statutorily disqualified and substituted an alternate juror, and (2) when it found a juror constitutionally disabled and proceeded with an eleven juror panel.  We conclude the trial court acted within its discretion.

We also consider the other issues previously raised by Appellant but not addressed in our prior opinion: (1) whether the judgment modifying the decree of divorce is supported by the pleadings, (2) whether the trial court erred by excluding relevant evidence concerning the issue of managing conservatorship, and (3) whether the trial court erred in its award of attorney's fees against George.  Having found no reversible error, we affirm the trial court's order.

**BACKGROUND**

The Texas Supreme Court's opinion recounts many of the applicable facts. *In the Interest of M.G.N. & A.C.N., Minor Children*, 441 S.W.3d 246 (Tex. 2014) (per curiam). Because our analysis includes previously unaddressed issues, we include additional facts.

George and Monica[1] entered into a Mediated Settlement Agreement on May 3, 2007. The divorce, signed on June 25, 2007, appointed George and Monica joint managing conservators of their two children.

## A. The Pleadings

In August of 2009, seeking sole managing conservatorship of the couple's two sons, George sued his ex-wife Monica to modify their final decree of divorce. George's petition alleged that Monica engaged in a pattern of bad acts and omissions contrary to the best interests and physical well-being of the children and requested the trial court mandate Monica's possession be limited and supervised. George also pled for attorney's fees and costs. Monica counterclaimed seeking child support and her appointment as sole managing conservator. Monica also sought attorney's fees and costs.

When Dr. Joann Murphey, the court-appointed expert, released her report recommending the continuation of the party's joint management relationship, Monica amended her pleadings to adopt Dr. Murphey's recommendation. Based on the joint managing conservatorship, Dr. Murphey recommended the following:

(1) mental health monitoring of the boys by a qualified child mental health professional;

(2) discretion be given to the qualified mental health professional to coordinate parenting disputes relating to exchange of possession, extracurricular activities, and other conditions without modifying the court-ordered schedule of visitation and access;

---

[1] For purposes of this opinion, we refer to the parties as George and Monica without reference to their last names.

(3)    each parent seek professional help to improve their parenting styles;

(4)    the present counseling relationship between the children and their counselor be maintained;

(5)    the parties should identify one pediatrician to serve as the primary care provider for the boys;

(6)    each parent should participate in individual psychotherapy;

(7)    the current possession schedule should continue except for Wednesday overnight possession;

(8)    "loving and caring" orders should be eliminated and only the court's orders should be operative; and

(9)    the children's domicile should remain in Bexar County.

Monica's amended counter-petition alternatively requested she be appointed sole managing conservator in the event the parties were not retained as joint managing conservators.

**B.     The Trial and Additional Hearings**

The case was called to trial on October 10, 2010. A jury of twelve individuals and an alternate were seated. After three days of testimony, one of the jurors was disqualified and excused based on concerns of impartiality and the alternate juror was seated. Two days later, one of the twelve remaining jurors was declared disabled after calling the court and explaining that he was ill and could not be in the courtroom. The trial proceeded with eleven jurors.

After six days of testimony, the eleven-person jury returned a verdict on the sole question of managing conservatorship. The jury declined to appoint George as sole managing conservator of the children thereby concluding that George and Monica should remain joint managing conservators.

On March 1, 2011, the trial court issued a modification order by which, among other things: (1) George retained the superior right to possession of the children at all times not specifically designated and the right to designate their primary residence; (2) Monica retained the right to select the children's dentist; (3) the costs of dental and orthodontic care were divided, in unequal parts,

between George (75%) and Monica (25%); and (4) George was to pay attorney's fees for two of Monica's attorneys.

George filed a motion for new trial complaining of the trial court's assessment of attorney's fees. George's motion for new trial raised, for the first time, a complaint about the failure to segregate the attorney's fees award.

On November 22, 2011, the trial court set aside its March 1, 2011 order and issued a final modification order. The final order (1) granted Monica the superior right to possession of the children at all times not specifically designated and (2) increased the attorney's fees assessed against George to include fees charges by all three attorneys representing Monica.

## C.    Rulings on Appeal

In our April 24, 2013 opinion, this court concluded the trial court deprived George of a full, twelve-member jury and denied him the right to jury trial guaranteed by the Texas Constitution by dismissing Juror Turney when he was not "disabled from sitting."

On August 22, 2014, the Texas Supreme Court reversed this court's judgment concluding our opinion "failed to properly examine the two dismissals under their appropriate standards: whether the substitution of an alternate was proper due to a statutory disqualification and whether continuing with eleven jurors was proper due to a constitutional disability." *In re M.G.N.*, 441 S.W.3d at 246.

We first address the supreme court's directive to assess the statutory juror qualification and the constitutional juror disability issues and then turn to the remaining complaints raised by George on appeal.

**JURORS**

**A.      Standard of Review**

A juror is statutorily disqualified if the juror admits bias or prejudice. *See* TEX. GOV'T CODE ANN. § 62.105 (1), (4); *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 751 (Tex. 2006); *Shepherd v. Ledford*, 962 S.W.2d 28, 34 (Tex. 1998); *LaSalle Pipeline L.P. v. Donnell Lands, L.P.*, 336 S.W.3d 306, 320 (Tex. App.—San Antonio 2010, pet. denied). "[W]hen the evidence does not conclusively establish a [juror's] disqualification, we consider the evidence in the light most favorable to the trial court's ruling." *Jordan v. Sava*, 222 S.W.3d 840, 845 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Buls v. Fuselier*, 55 S.W.3d 204, 210 (Tex. App.—Texarkana 2001, no pet.)). We further afford great deference to the trial court's evaluation of a juror because "trial judges are present in the courtroom and are in the best position to evaluate the sincerity and attitude" of the juror. *Murff v. Pass*, 249 S.W.3d 407, 411 (Tex. 2008) (citing *Hyundai Motor Co.*, 189 S.W.3d at 755). We will not disturb a trial court's disqualification of a panel member absent an abuse of discretion. *Jordan*, 222 S.W.3d at 845 (citing *Buls*, 55 S.W.3d at 210).

**B.      Statutory Disqualification of Impaneled Member of the Jury (Juror Turney)**

*1.      Arguments of the Parties*

George contends the trial court abused its discretion when it dismissed a juror because he was not disqualified from serving on the jury. George argues the juror's statements and actions were insufficient to disqualify him as a matter of law and the juror was removed based only on his view of evidence developed at trial.

Monica, on the other hand, contends among other things that because the juror allowed himself to be persuaded by his personal bias and prejudice, the juror was disqualified from jury service duty.

2. *Texas Government Code Section 62.105(4): Juror with Bias or Prejudice*

Bias is "an inclination toward one side of an issue rather than to the other," while prejudice means "prejudgment, and consequently embraces bias; the converse is not true." *Compton v. Henrie*, 364 S.W.2d 179, 181–82 (Tex. 1963); *Hyundai Motor Co.*, 189 S.W.3d at 751 ("Fair and impartial jurors reach a verdict based on the evidence, and not on bias or prejudice."). Bias or prejudice is not presumed; to prevail on a bias challenge, the party must show a potential juror will not act with impartiality. *Buls*, 55 S.W.3d at 210; *see also Guerra v. Wal-Mart Stores, Inc.*, 943 S.W.2d 56, 59 (Tex. App.—San Antonio 1997, writ denied). A trial court makes a factual determination, based on the entire record, whether a juror's state of mind leads to the natural inference of bias, which will affect the juror's actions. *Malone v. Foster*, 977 S.W.2d 562, 564 (Tex. 1998); *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex. 1963); *Compton*, 364 S.W.2d at 182.

3. *Venireman Joel Turney and Trial Court Findings*

During voir dire, venireman Joel Turney was questioned by both parties. He explained he was an electrical and lighting contractor, verified he did not know any of the parties, and opined he could be fair and impartial. Venireman Turney was selected to serve on the jury.

The first witness called to testify was George. During cross-examination, George was questioned regarding a business associate, Tim Smoot. Monica's attorney suggested George was responsible for "running [Smoot's] business into the ground" and "cheating [Smoot] in the business." After George's testimony concluded, the jury was released for the day, and Juror Turney advised the bailiff he had personal knowledge of Smoot's business.

Prior to testimony resuming, and outside the presence of the jury, the trial court questioned Juror Turney. Explaining that he and Smoot were in similar businesses, Juror Turney relayed that he knew "of George from Smoot Electric." Juror Turney stated that Smoot was still in business

and that Smoot's business struggles were due to the economy and not anything George had or had not done. Juror Turney further opined that he believed George and not Monica's attorney.

The trial court inquired whether Juror Turney felt that he could be a fair and impartial juror. Juror Turney replied as follows:

> I don't know what I'm allowed to say in deliberation with the other jurors, but I would like to explain to them my knowledge on what is in that case, but unless you tell me I can't bring up things that were not brought up between the lawyers, but I would like to. Otherwise I can't just keep it out of my conscience knowing what I know and —

After Juror Turney left the courtroom, the parties discussed whether Juror Turney was statutorily disqualified to serve on the jury. The trial court voiced concern over Juror Turney's response that he "would feel like he could not keep this information away from the other jurors." Over George's objections, the trial court explained:

> . . . we have an extra juror. Maybe I'd be cautioned if we didn't have an extra juror, but we have an extra juror. There's no reason to take the risk here of impartiality or not or of extra information going into the jury room. There is just no—we have an extra juror. We're going to go ahead and release Mr. Turney. We're going to proceed with our [twelve] jurors.

Juror Turney was released and Alternate Juror Gerardo Miranda was seated as the twelfth juror.

In its findings of fact, the trial court made the following findings regarding Juror Turney:

(1) he had "personal knowledge of Tim Smoot as they are both in the electrical business";

(2) "he would not consider evidence contrary to [George] because of his opinion of why Tim Smoot's business failed"; and

(3) He knew the real story about Tim Smoot's business and that it affected his impartiality."

*4. Analysis*

Because the evidence does not conclusively establish Juror Turney's statutory disqualification, we view Juror Turney's response to the trial court's questions in the light most favorable to the trial court's ruling. *See Jordan*, 222 S.W.3d at 845. We must also defer to the

trial court's findings of fact. *See Buls*, 55 S.W.3d at 210. We, therefore, cannot say it was an abuse of discretion for the trial court to find Juror Turney was statutorily disqualified given the court's findings that Juror Turney had personal knowledge of facts that affected his ability to consider the evidence in an impartial manner. We, therefore, cannot say the trial court abused its discretion in finding that Juror Turney was statutorily disqualified pursuant to section 62.105(4). *See* TEX. GOV'T CODE ANN. § 62.105(4). Because we conclude the trial court did not abuse its discretion in statutorily disqualifying Juror Turney based on bias or prejudice under section 62.105(4), we need not address whether Juror Turney was a witness, as alleged by Monica, under section 62.105(1). *See* TEX. GOV'T CODE ANN. § 62.105(1), (4).

Additionally, once the trial court dismissed Juror Turney based on statutory disqualification, the trial court could properly seat an alternate juror as the twelfth juror as long as the alternate was qualified to serve. TEX. GOV'T CODE ANN. § 62.020(c)-(d) (West 2013). Here, there is no question Miranda was qualified. Juror Miranda represented that he could be fair and impartial and the record does not show otherwise. Neither party objected at the time Venireman Miranda was seated as an alternate. Accordingly, we cannot conclude the trial court abused its discretion in determining Juror Miranda was qualified to sit as a juror in this matter or in seating Juror Miranda as the twelfth juror.

Having determined the trial court did not err in dismissing Juror Turney on statutory disqualification grounds, or in seating Juror Miranda as the twelfth juror, we next consider whether the trial court erred in concluding Juror George Park was constitutionally disabled, thereby allowing the court to proceed with only eleven jurors.

## D.    Constitutional Juror Disability

On the last day of trial, Juror George Park left a phone message for the court's clerk indicating he had a stomach ailment and was unable to attend trial on that day. Outside the

presence of the jury, the trial court and counsel for both parties contacted Juror Park. Based on the information Juror Park provided, the trial court determined he was constitutionally disabled and notified counsel the trial would proceed with eleven jurors.

George objected to continuing the trial with eleven jurors. He requested a recess for the day, and when it was denied, he moved for a mistrial. The trial court denied George's motion, found Juror Park constitutionally disabled to serve, and the trial proceeded with a panel of eleven jurors.

### 1. *Arguments of the Parties*

George argues there is no evidence that Juror Park's disability was permanent. He contends the trial court speculated that Juror Park might fall ill again and was more worried about losing another juror because of conflicts involving pre-disclosed travel plans.

Monica counters that Juror Park met the definition of constitutional disability because his illness (1) prevented him from contacting the court initially, (2) compelled his decision to remain home and not travel to the courthouse, and (3) precluded him from stating how long this disability would continue.

### 2. *Constitutional Disability*

Although the Texas Constitution requires district court juries to be composed of twelve persons, it allows a jury of less than twelve persons to return a verdict if, during trial, no more than three jurors die or become disabled from sitting. *See* TEX. CONST. art. V § 13. Similarly, the Texas Rules of Civil Procedure provide that "a verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten or more members of an original jury of twelve." TEX. R. CIV. P. 292; *see In re M.G.N.*, 441 S.W.3d at 248; *McDaniel v. Yarbrough*, 898 S.W.2d 251, 252 (Tex. 1995). "Thus, if a trial court's dismissal of a juror results in fewer than twelve

jurors, the dismissal must either be based on the juror's constitutional disability or the trial court must declare a mistrial if there was no constitutional disability." *In re MGN*, 441 S.W.3d at 248.

The Texas Supreme Court has clearly established that a constitutional disability is not just any inconvenience, but it must be in the nature of physical or mental incapacity. *Compare Yanes v. Sowards*, 996 S.W.2d 849, 850 (Tex. 1999) (concluding juror was constitutionally disabled because juror stated he was mentally and psychologically disabled from sitting because he would be distracted and unable to pay attention due the sickness and impending death of his grandfather) *with McDaniel*, 898 S.W.2d at 253 (determining juror not constitutionally disabled when juror is temporarily prevented from traveling to the courthouse because of flooding), *and Hous. & Tex. Cent. Ry. Co. v. Waller*, 56 Tex. 331, 337–38 (1882) (holding juror whose child was sick was not disabled absent evidence that his distress prevented him from discharging his job as a juror). We remain mindful that trial courts have broad discretion in determining whether a juror is "disabled from sitting." *See McDaniel*, 898 S.W.2d at 253.

### 3.   *Juror Park*

Here, Juror Park was sick. He relayed to the trial court that he had been unable to sleep due to bouts of diarrhea the previous night. When he woke the day of trial, he vomited. Juror Park explained that he felt better, but was sleep deprived. Although the juror asked the trial court to delay the trial a few hours to see if he would feel better, he also advised the trial court and counsel that he could not give them assurances he would be well by then.

We conclude that Juror Park provided the trial court with sufficient evidence to determine that he was physically incapable of attending trial. "Juror Park was not able to definitively state when he thought he would convalesce sufficiently to return to service." *See In re M.G.N.*, 441 S.W.3d at 247. Accordingly, we cannot conclude the trial court abused its discretion, or acted without reference to guiding rules or principles, in dismissing Juror Park on constitutional

disability grounds and proceeding with eleven jurors. *See* TEX. R. CIV. P. 292; *In re M.G.N.*, 441 S.W.3d at 248; *McDaniel*, 898 S.W.2d at 253.

Having concluded the trial court did not abuse its discretion in statutorily disqualifying Juror Turney and proceeding with eleven jurors based on Juror Park's constitutional disability, we address the remaining issues raised by George, but not part of our original opinion: (1) whether the trial court erred by excluding relevant evidence concerning the issue of managing conservatorship; (2) whether the judgment modifying the decree of divorce is supported by the pleadings; and (3) whether the trial court erred in its award of attorney's fees against George. Each will be addressed separately.

## HEARINGS BEFORE THE TRIAL COURT

We first address the evidence excluded before, during, and after George presented his case before the jury.

## A.      Evidence Excluded during the Trial on the Modification

### *1.      Standard of Review*

We review a trial court's decision admitting or excluding evidence for an abuse of discretion. *In re E.A.G.*, 373 S.W.3d 129, 144 (Tex. App.—San Antonio 2012, pet. denied). The trial court abuses its discretion if it acts "arbitrarily, unreasonably, and without reference to any guiding rules and principles." *Id.* We will not reverse the trial court's decision on the admissibility of evidence unless the appellant shows that the trial court erred and that such error "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1; *In re E.A.G.*, 373 S.W.3d at 144.

*2.    Argument of the Parties*

George argues the trial court erred in excluding the following evidence: (1) pre-MSA evidence; (2) Monica's proposed modification order; (3) a May 2008 temporary protective order obtained by George and Monica's violations of that protective order; (4) Monica's vindictive behavior against Dr. Gayle Monnig when she filed an ethical complaint against her; and (5) Dr. Mary Adam Perez's pediatric records.

Monica argues the trial court properly exercised its discretion in excluding the evidence.

*3.    Evidence before the Trial Court*

Before the jury trial began, the trial court granted Monica's motion in limine on the following issues:

- Monica's acts (violent and threatening) prior to May 3, 2007 (the date of the mediated settlement agreement);
- Any reference to incidents prior to May 3, 2007 contained in any social study performed after that date;
- Any reference to controversies between Monica and Dr. Monnig[2] regardless of when filed, including any complaints to the board of examiners of psychologists and letters from George's attorney to Dr. Monnig;
- Any reference to any controversy, including criminal, between George and Monica's counsel; and
- Monica's violent and threatening acts, and controversies between Monica and Dr. Monnig.

After the trial began, the trial court heard evidence *outside the presence of the jury* regarding George's assertions that Monica violated the May 2008 protective order. George testified that Monica walked up to him and his wife at a soccer game; Monica testified she was saying good-bye to the children and did not see George or his wife. Holding the evidence was

---

[2] Dr. Gayle Monnig is a licensed psychologist who, before the parties divorced, made recommendations relating to custody.

prejudicial and that the protective order lacked foundation, the trial court refused to admit the proffered evidence.

Before he rested his case, George offered and obtained an adverse ruling on Monica's post-MSA proposed modification order and Monica's post-MSA violation of the temporary protective order. Neither the proposed modification order nor the temporary protective order were offered before the jury or filed as part of the trial court record. The only time the matter was discussed before the trial court was during Monica's motion in limine.

After resting his case, but before Monica rested, George's counsel requested permission to make an "offer of proof" regarding evidence that was excluded based on Monica's motion in limine. The trial court refused to make a ruling on the offer explaining,

> I just don't know that I'm able to give you a ruling if it wasn't offered before, so I'm respectfully going to decline to rule at this time since I don't believe that I ruled before, but that's my rationale . . . .

The trial court did, however, allow George to make an offer of proof, outside the presence of the jury, on the following evidence in question: (1) Dr. Perez's pediatric records; (2) a proposed modification of the divorce decree sent by Monica's attorney to George; (3) Monica's alleged violation of a temporary protective order; (4) an ethical complaint made by Monica or her counsel against Dr. Monnig; (5) evidence of scratches to George's face allegedly resulting from an attack by Monica; (6) alleged death threats by Monica; (7) alleged road rage acts by Monica; and (8) alleged violent acts by Monica against a dog.

Before addressing whether the trial court's exclusion of the evidence was an abuse of discretion, we must first determine whether error was preserved for our review.

### 4.      *Preservation for Appeal*

"An appellate court does not reach the question of whether [the] evidence was erroneously excluded unless the complaint has first been preserved for review." *In re Estate of Miller*, 243

S.W.3d 831, 837 (Tex. App.—Dallas 2008, no pet.) (citing *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex. 1984)). "To preserve error on appeal, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling that appears in the record." *Id*. (citing TEX. R. APP. P. 33.1(a); *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999)); *see also Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 607 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The party's objection must be timely and specific and made at the earliest possible opportunity. *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 316 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

To challenge the trial court's erroneous exclusion of evidence, the "complaining party must present the excluded evidence to the trial court by offer of proof or bill of exception." *In re Estate of Miller*, 243 S.W.3d at 837; *see also* TEX. R. EVID. 103(a); *Fletcher*, 57 S.W.3d at 607; *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, no pet.). "An offer of proof consists of making the substance of the evidence known to the court and shall be made as soon as practicable after the ruling excluding the evidence, but before the court's charge is read before the jury." *In re Estate of Miller*, 243 S.W.3d at 837 (citing TEX. R. EVID. 103(a), (b)). "[F]ailure to make an offer of proof containing a summary of the excluded witness[es'] intended testimony waives any complaint . . . on appeal." *Akin*, 34 S.W.3d at 339. Without an offer of proof, an appellate court cannot make a determination whether the trial court committed reversible error. TEX. R. EVID. 103(a); *Carlile v. RLS Legal Solutions, Inc.*, 138 S.W.3d 403, 411 (Tex. App.—Houston [14th Dist.] 2004, no pet).

### a.    Dr. Perez's Medical Records

During his case-in-chief, George offered Dr. Perez's records. The trial court advised George it would review the records and rule at a later time; however, George rested his case-in-

chief without obtaining a ruling on the records. After George rested, and while making his offer of proof, George's attorney advised the trial court,

> Counsel: I would like to introduce medical records that we offered of—I think it's [*sic*] Children's Pediatric. It has to do with Mary Perez, that [sic] concludes statements by Doctor Perez and statements by [Monica] concerning her treatment of [A.C.N.].

The trial court again declined to rule despite George's attorney's request for a ruling.

To preserve a complaint for appellate review, the record must show that if the trial court refused to rule on a request, the complaining party objected to the refusal. TEX. R. APP. P. 33.1(a)(2)(B). If a party fails to object, error is not preserved and the complaint is waived. *Magnuson v. Mullen*, 65 S.W.3d 815, 829 (Tex. App.—Fort Worth 2002, no writ) (citing *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g)).

In this case, George failed to object to the trial court's refusal to rule on the admissibility of Dr. Perez's medical records. Accordingly, George waived his complaint regarding the exclusion of the records.

b.     Monica's Proposed Modification and George's Temporary Protective Order

During his case in chief, George offered Monica's proposed modification order and his temporary protective order. The trial court sustained Monica's objections and the documents were not admitted. After George rested his case-in-chief, he made the following offers of proof regarding Monica's proposed order and the protective order:

Monica's Proposed Modification

> Counsel: Finally, and I think you may have already ruled on this, but as an offer of proof I offered [sic] into evidence a proposed settlement agreement by [Monica] to [George]. The court said it was a settlement agreement, but it's the letter that—or rather a court order that her attorney sent to [George] early after the, um—after the mediated settlement agreement was entered into by the court. I don't know if it's marked as an exhibit. I think it is. I think you turned me down on it, but I want to reurge that—reurge that on the

basis that it shows that [Monica], like [George], was unhappy with the situation early on after the decree was entered.

<u>George's Ex-Parte Temporary Protective Order</u>

Counsel:    I would further like to introduce evidence, and I think you've already overruled me on this on the record, that there was, in fact, a protective order in existence in this matter, and I would like the court to rethink and allow me to introduce evidence of the protective order, not just the facts themselves but the protective order itself.

Although George's attorney makes reference to the proposed modification order and the temporary protective order, the actual documents were never tendered to the court reporter nor made part of the offer of proof. Moreover, neither offer of proof describes *with sufficient specificity* either the contents of the proposed modification or the temporary protective order. Because we cannot determine the substance of these exhibits from the offer of proof, and George did not include the exhibits in the trial court record as part of his offer of proof, George failed to preserve error as to the trial court's exclusion of these exhibits. *See Carlile*, 138 S.W.3d at 411.

c.    <u>Monica's Ethics Complaint Against Dr. Monnig and Other Bad Acts</u>

After resting his case in chief, George also made an offer of proof regarding Monica's ethics complaint filed against Dr. Monnig and the following evidence: photographs of scratches on George's face allegedly caused by an attack by Monica, alleged death threats made by Monica, alleged road rage incidents involving Monica, and an alleged attempted attack on a dog by Monica. George's offer of proof was as follows:

Counsel:    The first item that we would like to offer as offer of proof for purposes of a bill of exception, Your Honor, there was a post-May 3, 2007 event which occurred—um, I think in about March, 2010, which there was a demand and false claim against a witness in this matter, Doctor Gayle Monnig, to retaliate against her for recommending petitioner as the primary parent and to gain advantage in this proceeding.

We would like to show this has happened four years following the report. I would like to incorporate in this bill – well, I would like to

> offer evidence that a complaint was filed by the – by [Monica] with the Texas Psychological Association, whatever you call it, against Doctor Monnig.

We note that although the trial court had previously granted Monica's motion in limine on the proposed evidence, no testimony or other documentation was offered during George's case in chief.

"Orders granting or denying a motion in limine do not preserve error unless evidence is offered during the trial." A trial court's ruling on a motion in limine is a preliminary ruling on admissibility and does not preserve anything for appellate review. *Hiroms v. Scheffey*, 76 S.W.3d 486, 489 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 557 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998)); *see also Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex. 1963). Further, when a party rests without presenting evidence, the party waives the presentation of that evidence—even if an offer of proof is later made. *Giles v. Cardenas*, 697 S.W.2d 422, 424 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (citing *Parkview General Hospital, Inc. v. Waco Constr., Inc.*, 531 S.W.2d 224 (Tex. Civ. App.—Corpus Christi 1975, no writ)); *see also Estate of Veale v. Teledyne Indus.*, 899 S.W.2d 239, 242 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (explaining that for an offer of proof to preserve error, the proponent of the evidence must first offer the evidence during the evidentiary portion of trial).

During his case in chief, George did not offer evidence or secure a ruling from the trial court on the filing of the ethics complaint or any of the other alleged bad acts; he also never sought to reopen his case to include additional evidence or the actual complaint against Dr. Monnig. *Contra Apresa v. Montfort Ins. Co.*, 932 S.W.2d 246, 249 (Tex. App.—El Paso 1996, no writ) (holding exception applied when, after resting, a litigant motions to reopen his/her case to introduce additional evidence). We therefore conclude that George waived his complaint

regarding the trial court's exclusion of evidence of the ethic's complaint or Monica's other alleged bad acts on which the trial court ruled during the motion in limine.

   *5.     Monica's Restaurant Encounter with Dr. Monnig*

   We now turn to the evidence of Monica's restaurant exchange with Dr. Monnig.  During his case in chief, and outside the presence of the jury, George offered evidence and secured a ruling from the trial court excluding the evidence.  Before the charge was read to the jury, George made an offer of proof of Dr. Monnig's testimony regarding the exchange.  George advised the trial court that the purpose for that testimony was to show Monica's "general assertive and aggressive attitude."

   a.     <u>Evidence and Arguments Offered at Trial</u>

The excluded testimony from Dr. Monnig consisted of the following:

George's Counsel:     All righty.  Could you just describe what happened as concerns [Monica] on that occasion?

Dr. Monnig:     Well, basically what happened was that we were finishing up – we had taken my mother to church, and it was a Saturday night.  We went to eat dinner, and we were sitting there kind of like in a semicircle, and it was my mother, my husband, myself, and we were just finishing the meal.

And this woman walked up to me, and she had her tray kind of like on her hip like a waitress, and she said, Oh, hi, Doctor Monnig.  And for a minute I didn't know who it was, 'cause I had taught at SAC for 34 years, and I see all these people.  I'm like, who is this?

And she said, don't you remember me?

And I said, who are you?

And she said, well, I'm [Monica].

. . . .

So anyway, she said, well, I hope – I hope you're happy.

> And I said, about what?
>
> And she said, well, everything has happened just exactly the way I told you it was going to happen.
>
> I said, um, what?
>
> And she said, George moved from Atkins, pulled the boys up from their school, moved to San Antonio, uprooted 'em from everything, and now I've had to move to San Antonio myself and do this job [waitress] so I can be near my boys.

After the exchange with Monica, Dr. Monnig's husband reported the incident to the restaurant manager and proceeded to exit the restaurant with his wife. As they left the restaurant, Monica did not pursue Dr. Monnig. Dr. Monnig did not file any charges against Monica for this incident.

Monica objected to Dr. Monnig's proffered testimony on Rule 403 grounds. TEX. R. EVID. 403. She argued that because the relationship with Dr. Monnig began before the MSA and the final divorce, an explanation on the nature of their relationship would be necessary to explain why Monica approached Dr. Monnig. Such explanation, argued Monica, would open the door to pre-MSA matters when the incident had nothing to do with Monica's parenting.

George responded to Monica's objections by stating that the restaurant incident corroborated allegations of Monica's confrontational and mean behavior toward George and other witnesses, her "in-your-face" attitude, and her road rage incidents. The trial court agreed that being confrontational gives children a bad example, but stated that the restaurant incident was a minor part of the case. The trial court then acknowledged that by allowing testimony regarding the restaurant incident, the door would be opened to pre-MSA evidence, which the trial court was excluding.

After a lengthy discussion on the pros and cons of admitting the evidence, the trial court concluded "I just don't see how [the restaurant incident] is significant enough to this trial versus having to relitigate [sic] all those things that happened pre divorce."

b.     Arguments of the Parties on Appeal

Both parties agree that the restaurant incident was relevant evidence. They disagree, however, on the degree of relevance and on the application of Rule 403. *Id.*

As stated above, George argues the restaurant incident corroborates Monica's propensities of lack of self-control and aggression since the divorce. George contends the trial court erred by excluding the restaurant incident on "unfair prejudice" grounds. *See id.* He contends Rule 403 should only be used sparingly when dealing with the best interests of the child. George concludes that the exclusion of the evidence harmed George in presenting his case and resulted in the rendition of improper judgment.

Monica contends the probative value of the evidence is outweighed by the prejudicial effect of opening the door to pre-MSA evidence. Specifically, Monica argues the restaurant incident not only fails to rise to an instance of verifiable or credible aggression, but also opens the door to an explanation of Dr. Monnig's pre-MSA role in the divorce. Therefore, Monica concludes, evidence of a minor incident is outweighed by the danger of admitting pre-MSA evidence.

c.     Relevant Evidence

Texas Rule of Evidence 403 provides:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Murray v. Tex. Dept. of Family &*

*Protective Servs.*, 294 S.W.3d 360, 368 (Tex. App.—Austin 2009, no pet.) (citing *In re K.Y.*, 273 S.W.3d 703, 710 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "To exclude evidence under Rule 403 'is an extraordinary remedy that must be used sparingly.'" *Id.* (quoting *Trevino v. Texas Dep't of Protective & Regulatory Servs.*, 893 S.W.2d 243, 248–49 (Tex. App.—Austin 1995, no writ)). The opponent of the proffered evidence has the burden to show why the evidence is prejudicial and how the prejudicial attributes "substantially outweigh the probative value of the evidence." *Id.* (quoting *Goldbert v. State*, 95 S.W.3d 345, 367 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)).

In a modification of custody case, the focus is on the best interest of the child and on material or substantial changes to the circumstances of the child, a conservator, or other party affected by the order. *See* TEX. FAM. CODE ANN. § 156.101(a). We review such decisions for an abuse of discretion. *See In re M.M.S.*, 256 S.W.3d 470, 476 (Tex. App.—Dallas 2008, no pet.).

d.      Analysis

Based on the evidence presented, the trial court could have found that Monica's behavior at the restaurant did not exhibit a want of self-control or propensity for aggression. The trial court could also have found that Monica's behavior at the restaurant was not highly probative of Monica's parenting abilities or her relationship with her children. Accordingly, the trial court could have reasonably concluded the relevancy of the restaurant incident was outweighed by the danger of opening the door to pre-MSA evidence. As a result, we cannot conclude the trial court abused its discretion in excluding the same under Rule 403.

We turn next to the post-trial hearings and George's objections to the trial court's modification orders.

**B. Post-Trial Hearings**

*1. November 12, 2010 Hearing*

After the jury returned its verdict, an evidentiary hearing was scheduled for November 12, 2010, to address attorney's fees. Before that hearing, however, Monica's attorney filed a letter with the trial court, dated November 8, 2010, which requested the trial court to consider: (1) Dr. Murphey's recommendations, (2) Monica's request for child support, (3) both parties' requests for attorney's fees and costs, and (4) fourteen items that would modify other terms and conditions in the divorce decree. The fourteen items Monica requested to be modified were:

(a) Mother's Day and Father's Day to be observed beginning on the actual Sunday holiday rather than beginning the prior Friday;

(b) The addition of Easter and Halloween as holidays to be observed and alternated annually between Mom and Dad;

(c) Clarification regarding which party is entitled to possession of the children during the school day. The purpose of such a provision would be to alleviate any confusion or dispute as to who should attend to a sick child after a parent drops off, but before the other parent picks up from school;

(d) Specification with regard to the impact of holidays in connection with a week on/week off possession schedule. The purpose of such a provision would be to ensure that the observance of a holiday possession period does not result in an excessive extension of either parent's possession period due to such holiday observance;

(e) On each child's birthday, the addition of language to provide that the non-custodial parent be responsible for the children's dinner during that parent's possession period (6pm–8pm) and instruction that the custodial parent refrain from doing so;

(f) Mom and Dad should each have the independent right to provide therapy for the children;

(g) A requirement that in connection with prescription medications for the children, the parent who initially obtains the prescription medication shall share same with the other parent;

(h) The appointment of a local dentist and orthodontist for the children;

(i) A requirement that Mom, Dad, Step-mother, and children meet with a family therapist. The number of sessions to be determined by such therapist;

(j) The appointment of a monitor whose fees should be paid by Dad;

(k) With regard to extracurricular activities for the children, a requirement that each parent shall participate with the child regardless of which parent has enrolled the child in said activity. Mom shall select fall activities. Dad shall select spring activities. Summers shall be free of structured activities to allow each parent to vacation with the children;

(l) Dad to obtain and maintain dental insurance, to include coverage for necessary orthodontics for A.C.N.;

(m) Correct a typographical error in the existing decree . . . Should read Dad to have Thanksgiving in Odd Numbered Years;

(n) Delete language . . . of the existing decree designating that [George] has superior right to children at all times not otherwise designated.

At the November 12, 2010 hearing, the trial court heard evidence on both parties' requests for attorney's fees, including Monica's fees associated with ongoing proceedings in the same cause of action. George did not lodge a segregation of attorney's fees' objection. The trial court also heard the issues raised in the November 8, 2010 letter. George's counsel objected to the lack of notice and argued that requests "a" through "n" were not supported by the pleadings. The trial court granted George's request for a running objection based on "no-pleadings." Then, with the exception of item "h," dealing with the issue of dentist appointments, George proceeded to specifically object to each item on evidentiary grounds. The trial court overruled George's objections on insufficient pleadings, but did not rule on the specific evidentiary objections. No final orders were entered by the trial court.

### 2. *March 1, 2011: Trial Court's Modification Order*

A second hearing was held on February 28 and March 1, 2011 to review the trial court's initial proposed modification order. Despite his earlier objections, George agreed to several items in the November 8, 2010 list. These items included holiday and birthday possessions, designation of a therapist and monitor, and the correction of a typographical error in the decree regarding George's possession on Thanksgiving in odd years.

The trial court entered a modification order providing as follows: (1) George retained the superior right to possession of the children at all times not specifically designated and the right to designate their primary residence; (2) Monica retained the right to choose the children's dentist; (3) the costs of dental and orthodontic care were divided unequally between George (75%) and Monica (25%); and (4) George was required to pay attorney's fees for two of Monica's attorneys.[3]

### 3. *George's Motion for New Trial*

On May 10, 2011, George filed a motion for new trial on several issues; and, for the first time, objected to Monica's failure to segregate "the amount of attorney's fees or costs she incurred or expended in connection with her unsuccessful effort to modify child support from those fees or costs incurred or expended to prosecute or defend against the modification of the joint managing relationship."

On June 10, 2011, the trial court granted George's request for a new trial on the issue of attorney's fees only and denied the remaining issues raised by George's motion for new trial.

### 4. *November 22, 2011: Final Modification Order*

On November 22, 2011, the trial court set aside its March 1, 2011 order and issued a final modification order. In its final order, the trial court made two changes from its initial order (1) Monica was awarded the superior right to possession of the children at all times not specifically designated and (2) the attorney's fees assessed against George were increased to include fees charged by all three attorneys representing Monica.

We first address George's contention that the trial court's modification order was not supported by the pleadings.

---

[3] The trial court ordered George to pay $48,860.00 to H.E. Mendez and $36,404.23 to Jane Freeman Deyeso for attorney's fees incurred by Monica.

5.      *Was the Judgment Modifying Decree of Divorce Supported by the Pleadings?*

a.      <u>Standard of Review</u>

Section 156.101 of the Texas Family Code sets forth the grounds upon which a trial court may modify an order "that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child."  TEX. FAM. CODE ANN. § 156.101 (West 2014); *see In re Guardianship of C.E.M.-K*, 341 S.W.3d 68, 80 (Tex. App.—San Antonio 2011, pet. denied). Such an order may be modified if it is "in the best interest of the child" and upon a showing of a material and substantial change in circumstances.  TEX. FAM. CODE ANN. § 156.101.

> In matters concerning custody, control, possession, and visitation, the trial court's foremost consideration is the best interest of the child, and the court has discretion to fashion orders including injunctive relief that are in the best interest of the child and consistent with the allegations, general prayers for relief, and evidence, without the need for strict proof of the existence of a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law.

*King v. Lyons*, 457 S.W.3d 122, 131 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967) ("[A] suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child.")); *see also In re PMG*, 405 S.W.3d 406, 417–18 (Tex. App.—Texarkana 2013, no pet.) (in modification of conservatorship, party sought to be appointed as the person who has the right to designate the primary residence of the child thereby "necessarily invok[ing] the jurisdiction of the trial court over the matters of custody and control, imbuing the trial court with 'decretal powers'").

We review a trial court's decision to modify an order regarding conservatorship or the terms of possession of and access to a child under an abuse of discretion standard.  *See In re Scheller*, 325 S.W.3d 640, 645 (Tex. 2010); *accord In re Chambless*, 257 S.W.3d 698, 699 (Tex. 2008) (orig. proceeding) (per curiam); *Baltzer v. Medina*, 240 S.W.3d 469, 474–75 (Tex. App.—

Houston [14th Dist.] 2007, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

### b. Argument of the Parties

George contends the November 8, 2010 letter from Monica's counsel raised new matters not included in Monica's pleadings. George specifically complains that items "a" through "n" are not supported by the pleadings. He argues the trial court erred by sua sponte modifying the conservatorship when the court (1) removed George's right to choose the dentist for his children, despite taxing George with a disproportionate share of dental costs, (2) compelled both parties to participate in the extra-curricular activity chosen by the other parent, and (3) modified George's superior right to possession of the children at all times not otherwise designated in the decree.

Monica argues the pleadings of both parties ask for changes involving duties regarding custody and possession. Monica asserts that because dental decisions fall within these duties, George should not be surprised when the trial court grants the relief requested in the judgment.

### c. Fair Notice Pleadings

"Texas is a 'fair notice' state, which means that all parties are entitled to fair notice of a claim." *In re Russell*, 321 S.W.3d 846, 855 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]); *see also* TEX. R. CIV. P. 45, 47, 48, 50; *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000). The Texas Family Code specifically requires parties to include in their pleadings a "statement describing what action the court is requested to take concerning the child and the statutory grounds on which the request is made." TEX. FAM. CODE ANN. § 102.008(b)(10) (West 2014). "Without proper pleadings and evidence, a trial court exceeds its authority if it modifies or reforms previous orders affecting the custody of a child." *In re M.B.B-Y.*, No. 04-10-00541-CV, 2011 WL 1303437, at *2 (Tex. App.—San Antonio Apr. 6, 2011, no

pet.); *In re Russell*, 321 S.W.3d at 855; *see also In re T.R.B.*, 350 S.W.3d 227, 233 (Tex. App.—San Antonio 2011, no pet.); *see also In re Parks*, 264 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding); *In re A.M.*, 974 S.W.2d 857, 861–62 (Tex. App.—San Antonio 1998, no pet.).

      d.     <u>Analysis</u>

Because George orally agreed to many of the items during the March 1, 2011 hearing, we limit our discussion to (1) dental care decisions and costs and (2) awarding Monica the superior right to possession of the children at all times not specifically designated.

      (1)     Dental care decisions and costs

The parties' pleadings did not include a request to modify which parent makes dental care decisions and pays costs; however, the doctrine of trial by consent is an exception to the pleading rule. Under the trial by consent doctrine, issues not pled but tried by express or implied consent of the parties "shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67; *see also Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Holden v. Holden*, 456 S.W.3d 642, 651 (Tex. App.—Tyler 2015, no pet.). The doctrine of trial by consent, however, only applies when the record as a whole shows the unpled issue was tried. *Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Holden*, 456 S.W.3d at 651; *In re W.H.M.*, No. 02-14-00003-CV, 2014 WL 5791561, at *4–5 (Tex. App.—Fort Worth Dec. 11, 2014, no pet.); *but see In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.). "A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). The doctrine of trial by consent

"is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation." *In re A.B.H.*, 266 S.W.3d at 600.

During the jury trial, both parents testified at great length regarding their inability to agree on a dentist, proper treatment, and who should bear the costs. During the post-jury trial hearing, George raised, for the first time, the no-pleadings objection. Based on the record as a whole, we conclude the issues of dental decisions for the children and dental costs were tried by consent. *See* TEX. R. CIV. P. 67; *Holden*, 456 S.W.3d at 653; *In re W.M.H.*, 2014 WL 5791561, at *4–5. Accordingly, the trial court did not abuse its discretion in modifying the original divorce decree allowing Monica to select the children's dentist and to require George to pay 75% of the costs.

> (2) Superior right to possession of the children at all times not specifically designated

The original decree of divorce awarded George the superior right of possession of the children at all times not specifically designated therein. The trial court's March 1, 2011 modification order provided Monica the superior right of possession at all times not specifically designated in the order. George's objects to the modification of this right arguing there were no pleadings to support it. We disagree.

From the very start, George's pleading asks for modifications of the original possessory orders. Specifically, his pleadings sought:

> Modification of the prior order providing for the terms and conditions of conservatorship and *the possession of or access to the children* would be in the children's best interest as the circumstances of the children or a conservator have materially and substantially changed since the date of the mediated settlement agreement . . .

> In the alternative, Petitioner requests that the rights and duties of the respective conservators of the children be modified to provide that Petitioner have all the *exclusive rights and duties of a sole managing conservator.*

> Petitioner prays that the Court make appropriate *orders for the parties' period of possession with the children.*

Section 102.008(b)(10) requires the parties provide "a statement describing what action the court is requested to take concerning the child and the statutory grounds on which the request is made." TEX. FAM. CODE ANN. § 102.008(a)(10) (West 2014). The suit was originally brought to determine whether George should be named sole managing conservator of the children. *See King*, 457 S.W.3d at 131; *In re M.B.B.-Y*, 2011 WL 1303437, at *2. More importantly, the possession of the children was the primary subject about which both George and Monica testified during most of the trial. The conflicts ranged from scheduling doctor's appointments to preventing the children from seeing the other parent during extra-curricular activities.

Texas courts have long held that trial courts possess "wide discretion" when conducting proceedings in "a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child." *Leithold*, 413 S.W.2d at 701; *accord King*, 457 S.W.3d at 131; *In re P.M.G.*, 405 S.W.3d 406, 417 (Tex. App.—Texarkana 2013, no pet.). Because the issue of possession was properly pled, and the majority of the testimony regarded the same, we cannot say the trial court abused its discretion in awarding Monica the superior right of possession at all times not specifically designated in the order. *See King*, 457 S.W.3d at 131; *In re PMG*, 405 S.W.3d at 417–18.

Finally, we turn to George's contention that the trial court erred in assessing attorney's fees absent Monica's segregation of such fees.

6.     *Attorney's Fees*

George argues the trial court erroneously awarded Monica attorney's fees that were previously denied by the trial court. He asserts that Monica failed to adequately segregate: (1) the attorney's fees she incurred as a result of her unsuccessful effort to modify child support; and (2) the attorney's fees she incurred to prosecute the modification of the joint managing conservatorship.

Monica contends that George failed to object to the absence of segregation and therefore waived this issue on appeal.

> A failure to segregate attorney's fees in a case containing multiple causes of action, only some of which entitle the recovery of attorney's fees, can result in the recovery of zero attorney's fees. However, if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived.

*Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). In a bench trial, segregation of attorney's fees must be raised during the trial; raising the objection in a motion for new trial is not sufficient to preserve error. *See id.*; *Harvath v. Hagey*, No. 03-09-00056-CV, 2011 WL 1744969, at \*6 (Tex. App.—Austin May 6, 2011, no pet.) (mem. op.) ("In a bench trial, such as was held here, the segregation issue must be raised at trial."); *see also Editorial Caballero, S.A. de C.V. v. Playboy Enterprises, Inc.*, 359 S.W.3d 318, 341 (Tex. App.—Corpus Christi 2012, pet. denied); *Wagner v. Edlund*, 229 S.W.3d 870, 875 (Tex. App.—Dallas 2007, pet. denied); *Cullins v. Foster*, 171 S.W.3d 521, 535–36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

George raised the issue of segregation of attorney's fees for the first time in his motion for new trial. Because the issue of attorney's fees was tried to the trial court and not to the jury, George's objection raised during his motion for new trial was untimely, and he waived this complaint for purposes of appeal.

## CONCLUSION

Having overruled each of George's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice