

# Fourth Court of Appeals
## San Antonio, Texas

## DISSENTING OPINION

No. 04-20-00330-CV

**IN RE J.O.H.**, R.F.B., H.R., J.J.R., and M.L.D.

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-00260
Honorable Peter A. Sakai, Judge Presiding[1]

Opinion by:      Liza A. Rodriguez, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:         Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: December 18, 2020

In its best-interest analysis, the majority heavily relies on concerns about "return[ing] the children to Appellant Mother." Because affirming requires turning a blind eye to the difference between managing conservatorship and termination of parental rights, I respectfully dissent.

### THE DIFFERENCE BETWEEN CONSERVATORSHIP & TERMINATION OF PARENTAL RIGHTS

Terminating parental rights is different from denying a parent managing conservatorship. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "Termination of parental rights is traumatic, permanent, and irrevocable." *In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003). Being "total and irrevocable," termination of parental rights has been called "the 'death penalty' of civil cases." *In*

---

[1] Associate Judge Charles Montemayor signed the interlocutory order terminating Mother's parental rights.

*re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Conversely, an order denying a parent managing conservatorship is modifiable. *See* TEX. FAM. CODE § 156.101.

Courts are duty-bound to fully appreciate this difference. First, terminating parental rights violates a parent's fundamental constitutional rights, unless the State presents clear and convincing evidence showing termination—not mere denial of custody—is in a child's best interest. *Santosky v. Kramer*, 455 U.S. 745, 768 (1982). Second, as a matter of statutory construction, when requiring that "***termination*** [be] in the best interest of the child," the Texas Legislature clearly meant something different than when it required courts to consider "[t]he best interest of the child [when] determining the issues of ***conservatorship and possession . . . and access***." TEX. FAM. CODE §§ 161.001(b)(2), 153.002 (emphasis added). And third, for children, the difference between having a parent present in their lives—or not—is very significant.

The "best interest" of a child is not an abstract untethered concept. *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002) (noting such inquiries "are intensely fact driven"). Myriad orders require determining whether the specific order at issue is in a particular child's best interest. *See, e.g.*, TEX. FAM. CODE §§ 153.002, 154.122(b), 161.001(b)(2), 162.016(b), 266.004(b)(1). Thus, a best-interest analysis must account for whether the order relates to child support; consent to medical treatment; adoption; possessory conservatorship; managing conservatorship; or termination of parental rights. *See id.* In considering evidence of a child's best interest, we must appreciate the material differences between termination and conservatorship, and focus on whether the evidence shows an order totally and permanently ending a parent–child relationship is in a child's best interest, separate and apart from the issue of managing conservatorship. *See id.* §§ 153.002, 161.001(b)(2); *In re J.A.J.*, 243 S.W.3d 611, 615–16 (Tex. 2007).

**WHETHER TERMINATION OF MOTHER'S PARENTAL RIGHTS
IS IN THE BEST INTEREST OF THESE FIVE CHILDREN**

Mother does not challenge the trial court's order awarding the Department permanent managing conservatorship, or its finding that this award is in the children's best interest. So, under our standard of review, we may not disregard the following undisputed facts established by statutes as a matter of law. *See J.F.C.*, 96 S.W.3d at 266. First, retaining Mother's parental rights would not "return the children to Appellant Mother," or necessarily affect the children's current placement. *See* TEX. FAM. CODE §§ 156.001, 263.5031. Second, if Mother retained her parental rights, the trial court would retain broad discretion to fashion orders limiting Mother's visitation and access to protect the children's health and safety and to advance their best interests. *See id.*; *see also id.* § 153.006; *In re M.G.N.*, 491 S.W.3d 386, 405 (Tex. App.—San Antonio 2016, pet. denied). We must therefore be laser-focused on whether a permanent and total severance of this parent's rights—the death penalty of civil cases—is in the best interest of these children in this particular case.

Does the record in this case—consisting of no exhibits and approximately 40 pages of testimony regarding two parents and five children—show by clear and convincing evidence that these five children would be best served by their Mother not being in their lives? I would hold the evidence is insufficient. First, Mother testified without contradiction she has cared for the children since they were born; Mother has therefore been present for the children (ages four to fourteen at the time of trial) their entire lives. Furthermore, the caseworker admitted Mother "regularly visited [and] maintained significant contact with the children" throughout the case, and testified they were "strongly bonded." Mother was ordered to pay child support, and the Department presented no evidence showing she failed to make these payments. We cannot disregard the detriment to the

children of losing Mother, who they have known all their lives, as well as her support. *See J.F.C.*, 96 S.W.3d at 266.

The majority relies on evidence showing the children are doing well and have a stable home with their maternal grandmother, with whom they are bonded. The majority relies on concerns about returning the children to Mother (i.e. conservatorship, not termination), and appears to disregard the undisputed fact that retaining Mother's parental rights would not change the children's living situation, which "skew[s] the analysis." *See id.* The Department presented no evidence of its plans or the maternal grandmother's plans for the children. Thus, the evidence requires speculating the children will remain in their current living situation, when the Department may place the children in foster care at any time. *See* TEX. FAM. CODE §§ 263.501(b), 263.5031(4)(c).

The Department presented no evidence showing Mother lacked employment. And, the only evidence relating to Mother's parenting skills is the caseworker's testimony that, when she was arrested, Mother did not know where the children were. But the caseworker clarified the children were at school. The majority states the evidence shows Mother's "lack of stable housing," but the only evidence regarding Mother's housing shows she stopped living with one of the fathers (after the Department asked her to move and end her relationship with him), and now lives with her dad. No evidence shows Mother's current home is unstable. Furthermore, because it is undisputed that retaining Mother's parental rights would not involve returning the children to Mother, any housing instability is probative only to the extent that it affects her relationship with the children. The caseworker admitted Mother maintained significant contact with the children throughout this case, despite any housing issues she might have had.

The evidence shows Mother had used cocaine and marijuana, was arrested for possession and assaulting a fourteen year old, and did not complete her service plan. These facts are

concerning. But under our standard of review, the evidence supporting these facts "must be strictly scrutinized." *K.M.L.*, 443 S.W.3d at 112. The Department presented no evidence showing the date—before or after the children were born—Mother was arrested for the alleged assault, or whether Mother was ever charged or convicted. The Department also presented no evidence showing Mother used drugs, or was under the influence of drugs, in the presence of the children, or the extent or frequency of her use. It is undisputed Mother successfully completed a drug treatment program. Although Mother relapsed when she used cocaine once with her friends, she testified without contradiction the incident was a mistake and she reenrolled in a drug program, establishing some progress. The caseworker was concerned about Mother's relapse, but the concern was not significant enough for her to discontinue Mother's visits with the children.

The evidence of domestic violence is the most concerning. Unlike all its other concerns, the Department presented some evidence showing how the domestic violence affected the children. But we are not at liberty to disregard that retaining Mother's parental rights would not: (1) interfere with the children's therapy; (2) cause the children to be returned to Mother; or (3) prevent the trial court from exercising its broad discretion to fashion orders to adequately protect the children, who will remain in the Department's permanent managing conservatorship.

This case raises concerns that parental rights may be terminated when a parent has been arrested for assault (even if innocent) and possession of drugs, has an inconclusive history of domestic violence, and despite some progress, continues to struggle with substance abuse—no matter how strong the parent's bond with a child, or how much trauma would be inflicted on a child by permanently eliminating a parent from the child's life. Although the evidence raises serious questions about the propriety of Mother's managing conservatorship, the evidence is simply too paltry for a reasonable factfinder to form a firm belief or conviction that imposing the "death penalty" of civil cases—totally and permanently eliminating Mother from the children's

lives—is in the best interest of these five children in this particular case. For these reasons, I respectfully dissent.

Luz Elena D. Chapa, Justice