# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0409
════════════

IN THE INTEREST OF M.G.N. AND A.C.N., MINOR CHILDREN

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════

**PER CURIAM**

Our constitution permits trial courts to proceed with fewer than twelve jurors if the trial court finds that up to three jurors are constitutionally *disabled*. Our statutes allow trial courts to substitute qualified alternate jurors for regular jurors who become statutorily *disqualified*—a different standard altogether. This case tests both principles. Here, the trial court substituted an alternate for a regular juror whom it found to be disqualified. Subsequently, the trial court found that one of the twelve jurors had become disabled and proceeded with the remaining eleven. The court of appeals reversed, concluding that the dismissal of the disqualified juror ultimately led to an eleven-member jury in violation of the constitutional right to a jury trial. We conclude the court of appeals failed to properly examine the two dismissals under their appropriate standards: whether the substitution for an alternate was proper due to a statutory disqualification and whether continuing with eleven jurors was proper due to a constitutional disability. Accordingly, we reverse the court of appeals' judgment and remand to that court for further proceedings consistent with this opinion.

This is a child custody dispute. George Carl Noyes and Monica Noyes were divorced in May 2007. The final divorce decree appointed them joint managing conservators of their two children. In 2010, each party sought to be designated sole managing conservator, and both agreed to a jury trial.

Following voir dire, the trial court empaneled twelve jurors and retained one alternate. During cross-examination of George at trial, Monica's counsel asked him a series of questions concerning his former employer, Tim Smoot. The inquiries insinuated that George was at least partly responsible for Smoot's alleged business troubles, and Smoot was said to have accused George of "running his business into the ground." At the recess following this cross-examination, Joel Turney, a juror, alerted a court deputy to the fact that he personally knew Smoot. Before continuing with trial, and outside the presence of the other jurors, the trial court questioned Juror Turney about his connection to Smoot. Juror Turney disclosed he had transacted business with Smoot for many years and believed the insinuations by Monica's counsel were misleading because the juror knew Smoot was solvent. The trial court asked Juror Turney whether, in light of this personal knowledge, he could deliberate as a fair and impartial juror. Juror Turney admitted he was inclined to share his knowledge with the other jurors "unless you tell me I can't bring up things that were not brought up between the lawyers." The trial court instructed Juror Turney to withhold this information from the other jurors.

Following this hearing, Monica's counsel requested Juror Turney be excused, and George's counsel objected. The trial court dismissed Juror Turney, replaced him with the lone alternate juror, and proceeded with the trial. The court reasoned that because there was an alternate juror available,

2

"there [was] no reason to take the risk here of impartiality . . . or of extra information going into the jury room."

A second juror issue arose on the morning of the seventh day of trial when juror George Park left a message with the clerk indicating he was ill and unable to attend the proceedings. Before resuming trial for the day, the trial court called Juror Park and, along with counsel for both parties, questioned him about the nature of his illness. Juror Park was not able to definitively state when he thought he would convalesce sufficiently to return to service. Recalling its assurance to the jurors that they would be done with trial by that day and noting that Juror Park's return date was uncertain, the court held that the trial would proceed with eleven jurors. George's counsel moved for a mistrial, which the trial court denied. The eleven-member jury returned a unanimous verdict denying both parties' requests for sole managing conservatorship.

George appealed, arguing that the trial court violated his constitutional right to a jury trial, as the eleven-person jury fell short of constitutional and statutory strictures. The court of appeals agreed, and reversed and remanded for new trial, citing the Texas Constitution's requirement that a jury must consist of twelve members unless not more than three of them die or become "disabled from sitting." TEX. CONST. art. V, § 13. Such disability, the court reasoned, must be in the nature of an actual physical or mental incapacity–mere inconvenience or delay does not suffice. 401 S.W.3d 677, 679. While Juror Turney concededly "posed a risk of impartiality and of extra information going into the jury room," potential contamination from a tendentious juror is not a constitutional disability requiring dismissal. *Id.* at 680. When the trial court dismissed the second juror—Juror Park—due to illness, only eleven jurors remained. Therefore, the court of appeals

3

concluded the dismissal of Juror Turney when he was not constitutionally disabled ultimately resulted in an eleven-member jury and violated George's constitutional right to a jury trial.

Monica petitioned this Court for review, claiming the court of appeals misconstrued the Texas Constitution and our precedent. The construction of the constitution and statutes are questions of law we review de novo. *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 585 (Tex. 2013); *Nathan v. Whittington*, 408 S.W.3d 870, 872 (Tex. 2013).

The parties invite us to consider whether a juror's potential bias may render her constitutionally "disabled from sitting." But we need not reach that question in resolving this matter, as the issue is considerably more straightforward. In brief, a court need not find a juror constitutionally disabled in order to substitute an alternate when doing so does not lead to numerical diminution of a twelve-member jury.

The relevant jury requirements in this proceeding are found in both the Texas Constitution and in the Texas Rules of Civil Procedure. TEX. CONST. art. V, § 13; TEX. R. CIV. P. 292. The constitution specifies that grand and petit juries in the district courts shall be composed of twelve members. TEX. CONST. art. V, § 13. As few as nine jurors may render a verdict if, during trial, as many as three jurors "die, or become disabled from sitting." *Id*. The Rules of Civil Procedure have similar language allowing as few as nine remaining jurors to return and render a verdict if "as many as three jurors die or be disabled from sitting." TEX. R. CIV. P. 292. Thus, if a trial court's dismissal of a juror results in fewer than twelve jurors, the dismissal must either be based on the juror's constitutional disability or the trial court must declare a mistrial if there was no constitutional disability.

4

In an effort to improve efficiency by reducing mistrials, the Legislature implemented a system of alternate jurors. These alternate jurors are "drawn and selected in the same manner as regular jurors." TEX. GOV'T CODE § 62.020(c). In practice, this means that an alternate juror must have the same qualifications as a regular juror, be subjected to the same challenges, swear the same oath, and otherwise be considered equivalent to a regular juror. The plain language of this statute allows an alternate juror to substitute for a regular juror by a different and lesser standard than constitutional disability: when a regular juror is "unable or disqualified to perform their duties." *Id.* § 62.020(d); *see also Schlafly v. Schlafly*, 33 S.W.3d 863 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). A juror is deemed disqualified if he "has a bias or prejudice in favor of or against a party in the case." TEX. GOV'T CODE § 62.105(4). Taking the statute and constitution together, a trial court may substitute a regular juror with an alternate if the regular juror is unable to fulfill or is disqualified from fulfilling his duties, but a trial court may only dismiss a juror and proceed with fewer than twelve jurors if the dismissed juror is constitutionally disabled.

Here, the court of appeals conflated these provisions and held that the trial court wrongly proceeded with fewer than twelve jurors even though Juror Turney was not constitutionally disabled. Because the trial court substituted an alternate juror for Juror Turney, under the statute the trial court only needed to find that Juror Turney was disqualified from fulfilling his duties and that the alternate was qualified to serve. TEX. GOV'T CODE § 62.020(c)–(d); *Schlafly*, 33 S.W.3d at 863. The parties do not brief those issues here, and we do not address them. If the court of appeals concludes the trial court did not abuse its discretion in substituting the alternate juror for Juror Turney, it must then assess whether the trial court abused its discretion in proceeding with eleven jurors after finding

5

Juror Park constitutionally disabled. *See, e.g.*, *McDaniel v. Yarbrough*, 898 S.W.2d 251 (Tex. 1995) (juror not disabled due to severe flooding that made travel to the courthouse difficult); *Houston & T.C. Ry. Co. v. Waller*, 56 Tex. 331, 337 (1882) ("If a juror becomes so sick as to be unable to sit longer, he is plainly disabled from sitting."). Accordingly, pursuant to Texas Rule of Appellate Procedure 59.1, we grant the petition for review and, without hearing oral argument, reverse the court of appeals' judgment and remand for that court to consider the remaining issues in a manner consistent with this opinion.

**OPINION DELIVERED: August 22, 2014**