

NUMBER 13-19-00268-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOANNA GUIJARRO,                                                        **Appellant,**

**v.**

CHARLES P. JOHNSON, INC.,
INDIVIDUALLY AND D/B/A
CHARLES JOHNSON FINANCE;
CHARLES JOHNSON, INDIVIDUALLY;
MARILYN JOHNSON, INDIVIDUALLY; AND
LOANTEC SOFTWARE, INC.,                                             **Appellees.**

## On appeal from the 445th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Hinojosa**

Appellant Joanna Guijarro filed a lawsuit after her former employer, appellee

Charles P. Johnson, Inc., individually and d/b/a Charles Johnson Finance, terminated her employment. Guijarro sued appellees Charles Johnson, individually, Marilyn Johnson, individually, and LoanTec Software, Inc., as well. The trial court dismissed two of her claims when it granted appellees' motions for summary judgment, and a jury issued a take-nothing judgment on the remainder of Guijarro's causes of action.

On appeal, Guijarro contends the trial court erred when it: (1) granted appellees' motions for summary judgment on her invasion of privacy—misappropriation of name and intentional infliction of emotional distress claims; (2) denied her motion to reconsider on the motions for summary judgment; (3) substituted an alternate juror; (4) did not suspend the trial to accommodate a sitting juror; (5) denied her motion for directed verdict and granted LoanTec's motion for directed verdict; (6) entered a judgment that was against the great weight and preponderance of the evidence; (7) admitted certain evidence over objection; (8) denied Guijarro's motion for new trial; and (9) committed harmful error in failing to include an instruction on business habit. We affirm.

## I.  BACKGROUND

### A.    Factual History

Guijarro signed and submitted an employment form with Charles Johnson Finance, a personal loan company, on October 20, 2010. The employment application had a clause for applicants to acknowledge that the position was at will: "If I [am] hired, I understand that I [am] free to resign at any time with or without prior notice. And the employer preserves [sic] the same right to terminate my employment at any time with or without

2

cause and with or without prior notice."

Charles Johnson Finance hired Guijarro on November 11, 2010, as a customer service agent in its Brownsville office. The company eventually promoted Guijarro to be its Brownsville office branch manager. During Guijarro's employment with Charles Johnson Finance, the company issued rules and standards for its employees:

> Employment is not permanent for any person with a criminal arrest and/or conviction. . . . Criminal arrests of an existing employee may require leave of absence without pay until final disposition or may result in immediate termination based on the situation. This decision will be made by the employee supervisor.

Although Guijarro had a prior arrest for a misdemeanor on her record, she failed to disclose this when she received these updated rules and guidelines.

Guijarro claimed that she earned a bonus every year equal to ten percent of the company's profit as branch manager. Guijarro explained that she earned a bonus of $8,100 in 2011, $16,251 in 2012, $30,216 in 2013, and that she expected a bonus of nearly $50,000 for her work in 2014. It is undisputed, however, that there was no written contract guaranteeing this bonus; in fact, each bonus was issued with a letter stating "you understand that any bonus paid at the year's end is not representative of any bonus of any type or kind that will be paid the following year . . . . Do [not] plan your financial life on receiving an office bonus." Guijarro, though, believed she earned this bonus as part of an oral agreement with her supervisor Johnson.

On September 10, 2014, the Cameron County Sheriff's Office executed a search warrant at Guijarro's home and arrested both Guijarro and her husband after officers found firearms and illegal narcotics at the home. Guijarro spent the night in jail. The next

3

morning, she asked her sister to call Johnson to let him know Guijarro would be unable to report to work. When Guijarro was released from jail on September 11, 2014, she called Johnson personally to explain her work absence. Johnson informed her that her employment was terminated per company policy, due to her arrest. Guijarro testified that she was extremely upset about her termination.

After Guijarro's termination, she inquired about her bonus for 2014 but learned that she would not be receiving one. Guijarro filed for unemployment with the Texas Workforce Commission (TWC). She received a copy of a letter Johnson wrote to the TWC explaining her termination. In the letter, Johnson wrote the following:

> Joanna was our Brownsville, Texas company branch manager and was terminated after she and her husband were arrested and jailed on charges of or charges related to buying and selling cocaine from their home. This is their second arrest for selling drugs. Obviously, it is a violation of company policy that we sought an immediate termination with no exceptions permitted.

Guijarro found employment at Dollar Finance, a competing loan company, almost a month after her termination. Guijarro soon learned that Charles Johnson Finance continued to use pre-printed receipts and mailers with Guijarro's name on them containing pre-approved checks. Guijarro claims that the use of these mailers was done without her consent and was deliberate "in order to keep customers and develop new business" because of her excellent relationship with Johnson's customers. Guijarro also explained that neither she nor her husband were ever charged in relation to the September 10, 2014 arrest.

B.    **Procedural History**

On March 27, 2015, Guijarro filed a lawsuit against Charles Johnson Finance,

4

Charles Johnson, and his wife Marilyn Johnson, alleging the following causes of action: invasion of privacy—misappropriation of name; defamation; breach of contract; and intentional infliction of emotional distress.[1] She also requested an injunction to prohibit the appellees from using her name in the mailers.

On August 22, 2017, appellees filed a traditional motion for summary judgment on all of Guijarro's claims. The trial court held a hearing on this motion on September 19, 2017, and ultimately granted the motion as to all claims because Guijarro failed to file a response or attend the hearing. On October 13, 2017, Guijarro filed a motion to reconsider the granting of the traditional motion for summary judgment, a motion to set aside judgment, and a motion for new trial. The trial court granted all the requested relief and vacated its September 19, 2017 order.

Appellees filed a subsequent traditional motion for summary judgment on all of Guijarro's claims on May 15, 2018. After a hearing, the trial court granted summary judgment on Guijarro's claims for invasion of privacy—misappropriation of her name and intentional infliction of emotional distress on June 6, 2018. The remainder of Guijarro's claims, breach of contract and defamation, went to a jury trial on February 24, 2019. On February 25, 2019, the jury rendered a take-nothing verdict. Guijarro filed a motion for new trial on May 7, 2019, which the trial court denied. This appeal ensued.

## II. MOTION FOR SUMMARY JUDGMENT

Guijarro's first two issues on appeal concern the motions for summary judgment. First, Guijarro complains that the trial court erred when it granted appellees' traditional

---

[1] Guijarro added LoanTec Software, Inc. to her lawsuit in her Fourth Amended Petition, filed July 31, 2018.

motion for summary judgment on her invasion of privacy—misappropriation of name and intentional infliction of emotional distress causes of action. Guijarro's second issue challenges the trial court's denial of her motion to reconsider the orders granting summary judgment on each claim. We address each issue in turn.

## A. Standard of Review

In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We also consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the defendant produces sufficient

evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999). If less than a scintilla of probative evidence exists in the plaintiff's favor, a fact issue is not raised, and summary judgment is proper. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013)

## B.      Invasion of Privacy—Misappropriation on Name Claim

In Texas, there are three elements for invasion of privacy due to misappropriation of a name: (1) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) that the plaintiff can be identified from the publication; and (3) that there was some advantage or benefit to the defendant. *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.). "Texas law does not protect a name *per se,* but the value associated with it." *Id.* Liability for this tort arises when the defendant appropriates the plaintiff's name to benefit its commercial standing, reputation, or other values. *See id.* In general, an appropriation becomes actionable when the name is used "to advertise the defendant's business or product, or for some similar commercial purpose." *Watson v. Talia Heights, LLC*, 566 S.W.3d 326, 330 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (quoting *Steinbeck*, 53 S.W.3d at 900). Consent may be asserted as a defense in an invasion of privacy claim. *Kimbrough v. Coca-Cola/USA*, 521 S.W.2d 719, 723 (Tex. App.—Eastland 1975, writ ref'd n.r.e.).

Appellees focus their summary judgment argument on the issue of consent. The record shows that, at the time these pre-printed receipts were generated, Guijarro was

7

still employed by Charles Johnson Finance as its Brownsville branch manager and she gave her consent to use her name on these documents. In her deposition, portions of which the appellees used as summary judgment evidence, Guijarro testified that after she began working at Dollar Finance, she learned that Charles Johnson continued to mail the pre-printed receipts with her name. She did not, however, withdraw her consent:

Appellees: And it was right after you went to work for Dollar Finance that you found out that these receipts still had your name on them?

Guijarro: Yes.

Appellees: Did you tell anybody at that time with Charles Johnson Finance that you wanted them to stop putting your name on the receipts?

Guijarro: Anybody, as who?

Appellees: Anybody that worked for Charles Johnson Finance. Any of the ladies that were there in the office in the Brownsville branch, Charles Johnson, Marilyn Johnson, anyone.

Guijarro: No.

. . . .

Appellees: I mean, you didn't make one phone call to anyone with Charles Johnson Finance when you went to work for Dollar Finance, to tell them, "hey, these receipts still have my name on them. Please take my name off." You never did that; is that fair to say?

Guijarro: Correct.

Appellees thus conclusively negated an essential element of Guijarro's cause of action: they demonstrated that they did not use Guijarro's name or title in "an incidental manner" because they had her permission to use them. *See Frost Nat'l Bank*, 315 S.W.3d at 508. Once appellees produced sufficient evidence to establish their right to summary

8

judgment, the burden shifted to Guijarro to produce competent controverting evidence showing she withdrew consent. *See Van*, 990 S.W.2d at 753; *Kimbrough,* 521 S.W.2d at 723. In light of her deposition testimony, she did not meet this burden.

Because there was no genuine issue of material fact on an essential element of this claim, we conclude the trial court did not err in granting summary judgment on Guijarro's invasion of privacy—misappropriation of name claim.

## C. Intentional Infliction of Emotional Distress Claim

To prove a claim of intentional infliction of emotional distress, a plaintiff must establish: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017). The Texas Supreme Court has set forth a high standard for "extreme and outrageous" conduct, holding that this element is only satisfied if the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.; *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Courts consider the context and relationship between the parties to determine whether conduct meets this level of extreme conduct. *See Richard Rosen, Inc. v. Mendivil*, 225 S.W.3d 181, 192 (Tex. App.—El Paso 2005, pet. denied).

Here, Guijarro's pleadings allege that Johnson's "extreme and outrageous" conduct was the use of pre-printed mailers that bore Guijarro's name. We disagree that the simple act of mailing these documents constitutes the type of outrageous conduct

proscribed by this tort. Guijarro also claims that Johnson's letter to the TWC, wherein he asserted Guijarro was not entitled to unemployment insurance because "she and her husband were arrested and jailed on charges of or charges related to buying and selling cocaine from their home," constituted outrageous conduct. However, "a claim for intentional infliction of emotional distress does not lie for ordinary employment disputes." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). The request and denial of unemployment benefits constitutes an employment dispute. *See id*. Finally, Guijarro, in her deposition, argued that "appellees would tell customers that [Guijarro] worked off of Boca Chica or two blocks away from Charles P. Johnson, Inc. when she was actually working two doors down" was an "extreme and outrageous act." Even assuming this fact is true, as we must, we decline to hold that misstating the distance of where someone works constitutes behavior outside "all possible bounds of decency." *Hersh*, 526 S.W.3d at 468; *Suberu*, 216 S.W.3d at 796.

Indulging every reasonable inference in Guijarro's favor, we conclude Guijarro still did not raise an issue of material fact on this element and thus could not prove this claim. *See Mann Frankfort*, 289 S.W.3d at 848. Based on our de novo review of the record, the trial court did not err in granting the summary judgment motion on this cause of action. We overrule Guijarro's first issue.

D.    **Denial of Motion to Reconsider Granting of Summary Judgment**

After the trial court granted summary judgment on the above-discussed claims on June 6, 2018, Guijarro filed a motion to reconsider which was denied. Guijarro claims that

10

the granting of the partial summary judgment led to the rendition of an improper judgment.

The standard of review for a motion to reconsider a prior summary judgment is whether the trial court abused its discretion. *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Moroles v. Dr.'s Hosp. at Renaissance, Ltd.*, No. 13-09-00425-CV, 2010 WL 596855, at *2 (Tex. App.—Corpus Christi–Edinburg Feb. 18, 2010, pet. denied) (mem. op.). An abuse of discretion will not be found if the movant cites no additional evidence "beyond that available to him" when the first summary judgment was granted. *See Macy*, 294 S.W.3d at 651. A trial court abuses its discretion only when it makes a decision that is unreasonable or arbitrary, or without reference to any guiding rules or principles. *In re Thetford*, 574 S.W.3d 362, 374 (Tex. 2019) (orig. proceeding).

Guijarro's motion to reconsider presented no new evidence. Her motion stated, "Plaintiff hereby respectfully requests this Court to reconsider its ruling in this Motion for Summary Judgment and that it reinstate Plaintiff's claim for misappropriation of identity as Plaintiff presented competent evidence on each of the elements of the claims." It did not include any new affidavits or exhibits. We thus conclude the trial court did not abuse its discretion in denying Guijarro's motion when she failed to provide any new evidence to consider. *See Macy*, 294 S.W.3d at 651. We overrule Guijarro's second issue.

### III. JUROR ISSUES

Guijarro's next issues on appeal concern the jury panel. By her third issue, Guijarro claims the trial court erred when it substituted the alternate juror Cherie Clint for juror Roberto Salazar. In her fourth issue, Guijarro complains that the trial court should have

11

suspended the trial to accommodate juror Salazar.

### A.    Pertinent Facts

During voir dire, appellees asked, "This case is probably going to take seven days . . . is there anyone here who thinks that they may have a problem waiting to the end before making a decision?" In response, prospective juror Roberto Salazar disclosed that his wife was having last-minute gallbladder surgery that morning at Valley Baptist Hospital in Brownsville. He stated that he was concerned about his wife's recovery and who would care for his children during this time. Despite this disclosure, Salazar was selected as a juror along with two alternate jurors. The trial court swore in the jury. The trial court then released everyone for lunch, intending to begin trial that afternoon.

After the lunch dismissal, Salazar approached and relayed again that he could not participate as a juror because he was responsible for caring for his wife post-surgery for an undetermined amount of time. In addition, he was concerned about picking up his three children from school that day—he had no family or friends who could assist him. Appellees agreed that Salazar should be dismissed as a juror but Guijarro did not. Guijarro inquired as to whether the trial court could postpone the trial for two days until Salazar's wife was released from the hospital; she also inquired as to whether the surgery was "laparoscopic" or "an open procedure" which would affect Salazar's wife's recovery time. The trial court declined to postpone the trial and ultimately excused Salazar from serving as a juror over Guijarro's objection. Guijarro then moved for a mistrial, which was denied. The trial court subsequently assigned alternate juror Clint to the jury.

**B.     Applicable Law**

The Texas Legislature implemented a system of alternate jurors to improve judicial efficiency and reduce the possibility of mistrials. *See In Re M.G.N.*, 441 S.W.3d 246, 248 (Tex. 2014) (per curiam). These alternate jurors are "drawn and selected in the same manner as regular jurors." *Id.*; TEX. GOV'T CODE ANN. § 62.020(c). The plain language of this statute allows an alternate juror to substitute for a regular juror by a different and lesser standard than constitutional disability: the substitution can occur when a regular juror is "unable or disqualified to perform their duties." *Id.* (defining "constitutional disability" as an "actual physical or mental incapacity—mere inconvenience or delay does not suffice"); TEX. GOV'T CODE ANN. § 62.020(d). Denial of the constitutional right to trial by jury constitutes reversible error. *See McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995).

**C.     Analysis**

Both Salazar and Clint were "drawn and selected in the same manner as regular jurors"; both venire members underwent the same questioning and screening by the parties' attorneys in voir dire. *See In Re M.G.N.*, 441 S.W.3d at 248; TEX. GOV'T CODE ANN. § 62.020(c). Here, Salazar was "unable" to perform his duties as a juror because he had to assist his wife as she recovered from a last-minute surgery while caring for their three children. The plain language of Texas Government Code § 62.020 allowed the trial court to substitute juror Clint for juror Salazar without the necessity of determining Salazar's "constitutional disability." *See In Re M.G.N.*, 441 S.W.3d at 248; TEX. GOV'T CODE ANN. § 62.020(d). We thus hold the trial court did not err when it excused Salazar

13

from serving and replaced him with Clint.

Guijarro further complained that the trial court should have suspended the trial to accommodate Salazar's schedule. We disagree with this assertion. "A trial court is given wide discretion in managing its docket, and we will not interfere with the exercise of that discretion absent a showing of clear abuse." *First State Bank of Mesquite v. Bellinger & Dewolf, LLP*, 342 S.W.3d 142, 145 (Tex. App.—El Paso 2011, no pet.) (citing *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982)). As noted earlier, both Salazar and Clint underwent the same selection process in voir dire. The trial had not yet begun. The trial court's substitution of Clint for Salazar allowed the parties to start trial on time, avoiding the possibility of rescheduling witnesses. In addition, the parties had a full twelve-member panel with jurors that would be attentive and not preoccupied with emergent family circumstances. We overrule Guijarro's third and fourth issues.

## IV. MOTION FOR DIRECTED VERDICT

Guijarro's fifth issue on appeal challenges the trial court's denial of her motions for directed verdict and granting of appellee LoanTec's motion for directed verdict.

### A. Applicable Law & Standard of Review

A directed verdict is proper when: (1) a defect in the opponent's pleadings makes them insufficient to support a judgment, (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Koepke v. Martinez*, 84 S.W.3d 393, 395 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied).

The denial of a motion for directed verdict lays the foundation for challenging the

14

evidence on appeal by points of error contending there was "no evidence" of a certain fact or that a fact was established "as a matter of law." *Id*. We review the denial of a directed verdict by a legal sufficiency or "no evidence" standard of review. *Id*. at 396; *see also City of Keller*, 168 S.W.3d at 809–28.

In reviewing a legal insufficiency point, we examine the record by considering only the evidence and inferences favorable to the judgment and uphold the trial court's decision if there is more than a scintilla of supporting evidence. *Koepke*, 84 S.W.3d at 396; *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex. App.—El Paso 1992, no writ). The trial court should direct a verdict when reasonable minds can draw only one conclusion from the evidence. *Koepke*, 84 S.W.3d at 396*; see also Tana Oil Co. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003). A directed verdict may be affirmed even if the trial court's rationale for granting the directed verdict is erroneous, as long as it can be supported on another basis. *Kelly v. Diocese of Corpus Christi*, 832 S.W.3d 88, 89 (Tex. App.—Corpus Christi–Edinburg 1999, writ dism'd w.o.j.).

**B.      Guijarro's Motion for Directed Verdict**

Guijarro's first motion for directed verdict argued that she proved her defamation case as a matter of law. Guijarro stated that it was undisputed that Johnson published a letter to the TWC that falsely claimed Guijarro "sold illegal drugs," as Guijarro's arrest did not lead to any criminal charges being filed. Citing *Mitre v. Brooks Fashion Stores, Inc*., 840 S.W.2d 612, 619–20 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied), Guijarro argued that "if a statement unambiguously and falsely imputes criminal conduct

15

to the plaintiff, it is defamatory per se." *Id*.

In response, appellees argued that there was conflicting evidence for the trier of fact to consider on this issue. Johnson's letter stated that Guijarro was "arrested and jailed on charges of or charges related to" drugs. It is undisputed that Guijarro was arrested on September 10, 2014, with her husband and spent that night in jail. Appellees also referred to the fact that, even if the arrests never led to formal charges, it was the second time Guijarro had been arrested. The record showed the trial court's admission of a 2004 Brownsville Herald article about the Guijarros, wherein the newspaper reported that the couple was arrested for selling cocaine at their home. The article also stated that, "Juan and Joanna Guijarro were arraigned in municipal court" for the 2004 arrest.

Based on the conflicting evidence, there was not "only one conclusion" to draw regarding the publication of the TWC letter. *Koepke*, 84 S.W.3d at 395*; see also Tana Oil*, 104 S.W.3d at 82. Considering only the evidence and inferences favorable to the judgment, we conclude there is more than a scintilla of evidence to support the court's decision. *Koepke*, 84 S.W.3d at 396. The trial court properly denied this motion for directed verdict and allowed the fact issue to go before the jury.

## C. LoanTec's Motion for Directed Verdict

Guijarro also challenges the trial court's directed verdict in favor of LoanTec on her intentional interference with existing contract claim. The record shows that LoanTec was a separate legal entity owned by Johnson. LoanTec owned and managed a computer software program Johnson created for his finance company. LoanTec also leased this software to other personal loan companies, like Guijarro's subsequent employer Dollar

16

Finance.

In her pleadings, Guijarro alleged that Johnson "threatened Dollar Finance, Guijarro's current employer, with terminating the lease of software known as LoanTec Financial Software after finding out Guijarro was an employee of Dollar Finance and refusing to sell to the [Dollar Finance] Harlingen location." During trial, however, Guijarro testified that her job at Dollar Finance was never threatened or at risk if Johnson failed to lease to Dollar Finance's Harlingen office. Johnson, in his direct examination, also testified that he never told anyone he would fail to renew the LoanTec software lease with Dollar Finance if it continued to employ Guijarro. During a hearing outside the presence of the jury, LoanTec requested a motion for directed verdict on this claim which the trial court granted.

The elements of tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998) (per curiam). Considering only the evidence and inferences favorable to the trial court's decision, such as Guijarro's testimony that her job was never threatened regardless of LoanTec's decision to lease its software to Dollar Finance and Johnson's testimony that he never made such intimidations, we conclude there was no evidence of "willful and intentional interference." *Id*.; *Koepke*, 84 S.W.3d at 395. We also conclude there was no evidence of "actual damage or loss." *Powell Indus., Inc.*, 985 S.W.2d at 456; *Koepke*, 84 S.W.3d at 395. Further, there was no evidence of an employment contract with Dollar Finance, either—Guijarro's employment appeared to

17

be at-will. The evidence conclusively established LoanTec's right to judgment as a matter of law. *Koepke*, 84 S.W.3d at 395. We overrule Guijarro's fifth issue.

## V.  JUDGMENT

Guijarro's sixth issue challenges the trial court's entry of a judgment that was against the great weight and preponderance of the evidence.

## A.    Applicable Law

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). When an appellate court reviews a factual sufficiency point of error, "we consider, weigh, and examine all of the evidence which supports or undermines the jury's finding." *Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 73 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (citing *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989)). As we review the evidence, we keep in mind that it is "the jury's role, not ours, to judge the credibility of the evidence, to assign the weight to be given to testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony." *Id*. We must only set aside a jury's verdict if we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Id*. (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per

18

curiam)).

**B.    Analysis**

### 1.  The Defamation Claim

Guijarro first challenges the jury's response to Question Number 5 of the jury charge, which read, "Did Charles Johnson publish a statement that Joanna Guijarro sold illegal drugs?" The charge defined "publish" as "intentionally or negligently to communicate [sic] the matter to a person other than Joanna Guijarro who is capable of understanding its meaning." The jury answered "no."

Appellees contend that the TWC letter in evidence did not explicitly state that Guijarro sold illegal drugs. Instead, the letter provided that Guijarro and her husband were jointly "arrested and jailed on charges of, or charges related to" drugs. Although Guijarro's brief argues that the letter was read by TWC employees to make a decision on unemployment benefits, the record does not contain any testimony from TWC employees to suggest publication of the letter. When Guijarro was specifically asked if she could provide the name of a single person who saw the letter from within the TWC, she responded, "No." The record further revealed that Guijarro could not name the TWC representative with whom she spoke, where the employee was calling from, or if that TWC employee or any other employee shared Johnson's letter. In addition, no witness testified that Johnson told them Guijarro "sold cocaine."

It was within the jury's purview to consider the TWC letter, witness testimony, and other evidence regarding this issue. Reviewing the record as a whole, we cannot say that the evidence standing alone was too weak to support the jury's answer of "no" to Question

19

Number 5 regarding whether Johnson published a statement that Guijarro "sold cocaine." And because the jury answered "no" to Question Number 5, it was not required to answer Questions 6, 7, 8, 9, 10, and 11.[2]

### 2. The Breach of Oral Agreement Claim

Second, Guijarro argues that the "[j]ury's 'No' answer to Question Number 1 was also against the great weight and preponderance of the evidence." Question Number 1 asked, "Did Charles Johnson and Joanna Guijarro agree that Charles Johnson Finance would pay Joanna Guijarro a bonus of 10% of the Brownsville office's profits for calendar year 2014?" Guijarro testified that she, as well as all other branch managers, were entitled to ten percent of the company profit "every February." At trial, no other branch manager testified to this arrangement. Guijarro admitted that she never had a written contract

---

[2] Here are the jury charge questions at issue, which relate to Guijarro's defamation claim:

- Question No. 6: "Was Charles Johnson acting in the scope of this employment in making the statement(s)?"

- Question No. 7: "Was any statement found in Jury Question 5 defamatory concerning Joanna Guijarro?"

- Question No. 8: "Were the statements found in Jury Question 5 substantially true at the time it was made as it related to Joanna Guijarro?"

- Question No. 9: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Joanna Guijarro for her damages, if any, that resulted from the publication of defamatory statement(s)?"

- Question No. 10: "Do you find by clear and convincing evidence that, at the time Charles Johnson made any statements in Question 5: (1) Charles Johnson knew it was false as it related to Joanna Guijarro; or (2) Charles Johnson made the statement with a high degree of awareness that it was probably false, to an extent that Charles Johnson in fact had serious doubt as to the truth of the statement?"

- Question No. 11: "What sum of money, if any, if paid now in cash, should be assessed against the wrongdoer(s) and awarded to Joanna Guijarro as exemplary damages, if any, for the conduct found in response to Question No. 10?"

20

setting forth this agreement; rather, it was an oral agreement. Guijarro also agreed that she signed an acknowledgment letter every year when she received her bonus, which stated in underlined language, "you understand that any bonus paid at the year's end is not representative of any bonus of any type or kind that will be paid the following year . . . . Do [not] plan your financial life on receiving an office bonus."

In light of the foregoing evidence, we cannot say that the jury's finding that there was no agreement regarding bonuses was against the great weight and preponderance of the evidence. And because the jury, as triers of fact, answered "no" to Question 1, the charge instructed them that it was unnecessary to answer Questions 2 through 4.[3]

In sum, it was the jury's role, not ours, to judge the credibility of the evidence, to assign the weight to be given to testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *See Reyna*, 55 S.W.3d at 73. After a thorough review of the record, we cannot conclude that the evidence presented during trial resulted in a judgment that was "manifestly unjust and clearly wrong." *Id*. We overrule Guijarro's sixth issue.

---

[3] Here are the remaining jury charge questions at issue, which relate to Guijarro's breach of oral agreement cause of action:

- Question No. 2: "Did Charles Johnson Finance fail to comply with the Agreement?"

- Question No. 3: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Joanna Guijarro for her damages, if any that resulted from Charles Johnson Finance's failure to comply?

- Question No. 4: "What is a reasonable fee for the necessary services of Joanna Guijarro's attorney in this case, in dollars and cents?"

## VI. ADMISSION OF EVIDENCE

By her seventh issue, Guijarro contends the trial court abused its discretion when it failed to admit evidence of the pre-printed receipts using Guijarro's name and title as branch manager during trial. She also complains that the trial court should not have admitted a January 10, 2004, Brownsville Herald newspaper article reporting that Guijarro and her husband were arrested for selling cocaine from their backyard.

## A.    Applicable Law

Evidentiary matters are within the sound discretion of the trial court. *Cunningham v. Hughes & Luce, L.L.P.*, 312 S.W.3d 62, 70–71 (Tex. App.—El Paso 2010, no pet.). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 766 (Tex. 2006). In other words, the appropriate question in an evidentiary inquiry is whether the ruling was arbitrary or unreasonable. *Id.* An appellate court will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment or probably prevented appellant from properly presenting its case to the court of appeals. *Id.*

To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); *see* TEX. R. APP. P. 44.1(a). An appellate court will generally not find reversible error for erroneous rulings on admissibility of evidence where the evidence

22

in question is cumulative and not controlling on a material issue dispositive of the case. *Gee*, 765 S.W.2d at 396. "Thus, we must review the entire record to determine whether the judgment was controlled by the testimony that should have been excluded." *Id*.

**B.     Analysis**

Guijarro contends that the trial court abused its discretion when it failed to admit the pre-printed receipts using Guijarro's name and title that were mailed to new and existing clients after her termination from Charles Johnson Finance. The court explained its reasoning to exclude these documents:

> All right. On a different note, I've looked at my ruling regarding [Guijarro's] request to bring in evidence concerning—[Guijarro] trying to establish damages by showing that [her] name and likeness [were] being used after September after she was fired to establish damages on the breach of contract, and . . . I am not going to allow you to do that. I believe that it does go to the other cause of action that I've already ruled on and it's just going to confuse the jury, so I'm not going to allow you to do that. . . [Y]ou're trying to mix two causes of action, [counsel]. I already—already granted a motion for summary judgment on the misappropriation of her name and likeness . . . .[4]

Given the fact that Guijarro's cause of action for "invasion of privacy—misappropriation of name" had been dismissed in a summary judgment motion and was not a cause of action before the jurors, we cannot say that the trial court abused its discretion in disallowing this evidence. *See Hyundai Motor Co.*, 189 S.W.3d at 766. The evidence would have been irrelevant and confusing to the jurors. *See* TEX. R. EVID. 403. Furthermore, because both Guijarro and Johnson testified regarding the existence and

---

[4] The court allowed them to be admitted into the record, however, as an offer of proof for appellate review.

23

mailing of these documents, the actual admission of these mailers would also have been cumulative. *See Gee*, 765 S.W.2d at 396.

Guijarro also challenges the trial court's admission of a 2004 Brownsville Herald article reporting that "a married couple was arrested Thursday by the Brownsville Police Department for selling cocaine from their backyard at 2602 Bess Court." However, during his deposition testimony which was admitted at trial, Juan Guijarro testified about the circumstances of this article. When asked if he was arrested for selling cocaine out of his backyard in 2004, he answered, "I was arrested, yes."[5] The admission of the article was thus cumulative of Juan's testimony and not harmful. *Gee*, 765 S.W.2d at 396; *see Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008) ("admission or exclusion is likely harmless if the evidence was cumulative . . . ."). We overrule this issue.

## VII. MOTION FOR NEW TRIAL

In her eighth issue, Guijarro complains that the trial court erred when it denied her motion for new trial. Her briefing on this issue is comprised of one sentence: "the trial court abused its discretion in overruling Guijarro's Motion for New Trial." It points to one page and one appendix in the record and cites no case or statutory authority. Accordingly, we overrule this issue for inadequate briefing. *See* TEX. R. APP. P. 38.1(i) (providing that

---

[5] Guijarro denied that his wife was arrested or even there, even though the article reported that, "Juan and Joanna Guijarro were arraigned in municipal court" for the 2004 arrest.

an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

## VIII. JURY CHARGE

By her ninth issue, Guijarro claims the trial court committed harmful error in failing to include an instruction on "business habits" when it considered her breach of an oral agreement claim.

### A. Applicable Law

"We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review." *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (citing *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)). The trial court has considerable discretion to determine proper jury instructions. *Id*. An appellate court will not reverse a judgment for a charge error unless that error was harmful because it "probably caused the rendition of an improper judgment" or "probably prevented the petitioner from properly presenting the case to the appellate courts." *Id*. (citing TEX. R. APP. P. 61.1); *see* TEX. R. APP. P. 44.1(a).

### B. Analysis

Guijarro claims the trial court should have given the following charge regarding business habits on her breach of oral agreement claim: "'Evidence of a person'[s] habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." She contended that the failure to include this language was harmful "because the instruction would have shifted the jury's focus to the routine practice of the

organization; thereby expanding the scope of the scrutiny of whether Guijarro was entitled to a bonus."

We disagree that the trial court's refusal to include this definition was an abuse of discretion. In Question Number 1 of the jury charge, which asked, "Did Charles Johnson and Joanna Guijarro agree that Charles Johnson Finance would pay Joanna Guijarro a bonus of 10% of the Brownsville office's profits for calendar year 2014?," the court included the following instruction:

> You are instructed that in deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing.

The trial court's instruction for the jury to consider "any earlier course of dealing" included the business organization's "habits or routine practice." Therefore, the substance of Guijarro's requested instruction was in the charge, although perhaps not in the same form as she submitted. *See McIntyre v. Comm'n for Lawyer Discipline*, 247 S.W.3d 434, 443 (Tex. App.—Dallas 2008, pet. denied) ("The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury."). Because the trial court was within its discretion to word this instruction as it saw fit for the jury, we overrule Guijarro's ninth issue.

## IX. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed on the
25th day of March, 2021.