

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-24-00268-CV

**IN THE INTEREST OF C.C.O.**, a Child

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CVPC-23-0000031
Honorable M. Patrick Maguire, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
               Luz Elena D. Chapa, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: November 27, 2024

AFFIRMED

Following a jury trial, appellant K.O. ("Father") appeals from the trial court's order terminating his parental rights to his child, C.C.O.[1] In his first three issues, Father challenges the legal and factual sufficiency of the evidence to support termination under Texas Family Code section 161.001. In a fourth issue, Father challenges the trial court's failure to submit C.C.O.'s paternal grandmother, D.O. ("Grandmother"), as a potential conservatorship choice in the jury charge. In his final issue, Father asserts the trial court erred in admitting and excluding certain evidence. We overrule Father's issues and affirm.

---

[1] To protect the identity of the child, we refer to her and her relatives by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

On January 26, 2023, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate Father's parental rights to C.C.O. The case was tried to a jury beginning on March 19, 2024.[2] At the time of trial, C.C.O. was thirteen years old. However, according to C.C.O.'s counselor, who treated her the month before trial, C.C.O. functioned at the level of a seven year old. A Department caseworker testified that C.C.O. had been diagnosed with "borderline intellectual functioning disability," "oppositional defiant disorder," and "depressive disorder."

For most of her life, C.C.O. lived with Father and her paternal Grandmother.[3] Father testified that he was incarcerated for DWI when C.C.O. was between the ages of four and eight. In June 2022, when C.C.O. was eleven, Father was arrested and again confined, this time pending resolution of an assault charge. At all times while the parental-termination case was pending in the trial court, Father was incarcerated on this assault charge.

While Father was confined, C.C.O. lived with Grandmother. The Department first became involved in November 2022, when it received allegations of physical altercations between C.C.O. and Grandmother. Initially, the Department offered family-based services. However, according to a Department caseworker, C.C.O.'s "behaviors were escalating to the point where she injured [Grandmother]," and the Department's priority became "to get [C.C.O.] out of the home [and] into a safe place." According to the caseworker, Father would not agree to voluntary joint managing conservatorship, so the Department filed its petition for C.C.O.'s removal and for termination of Father's parental rights. The trial court ordered C.C.O.'s removal in January 2023. In February

---

[2] Eight witnesses testified at trial, including C.C.O., Father, Grandmother, and two Department caseworkers. Because resolution of Father's appeal does not require a full summary of testimony, we provide an abbreviated background. *See* TEX. R. APP. P. 47.1.

[3] According to Father, the parental rights of C.C.O's mother were terminated when C.C.O. was four months old.

2023, Grandmother intervened in the case, requesting that the court grant immediate temporary orders placing C.C.O. with Grandmother.

Following removal, C.C.O. was placed with her paternal great uncle and his wife. However, this placement ended shortly after it began. A Department caseworker testified that the great uncle and his wife asked to end C.C.O.'s placement with them because "they could not handle her behaviors," including outbursts and anger. C.C.O. was next placed at an emergency shelter in Kerrville. The Department's goal, at that time, was to facilitate a monitored return of C.C.O. to Grandmother. Grandmother cleaned her home, completed parenting classes, and attended therapy, and the Department returned C.C.O. to Grandmother's care in June 2023. This placement too was short-lived. Eight days after C.C.O. was returned to Grandmother's home, she was removed. The removal was prompted by C.C.O.'s statements to a family counselor that Grandmother hit her and that C.C.O. was afraid to return home with Grandmother. C.C.O. was returned to the Kerrville emergency shelter.

During her second stay in Kerrville, C.C.O. ran away. After she was located, she was moved to a placement in Comfort. According to a Department caseworker, C.C.O. became more defiant while in Comfort and ran away multiple times. The placement in Comfort lasted until December 2023. Thereafter, C.C.O. was placed at a shelter in Bulverde. There, according to the Department's caseworker, C.C.O. was aggressive. She ran away from her placement on the night of January 3, 2024, and was recovered the next day in San Marcos. In connection with this runaway, a forty-one year old male was arrested and charged with trafficking a person from a shelter. *See* TEX. PENAL CODE ANN. § 20A.02(a), (b)(4)(C). Additionally, C.C.O. underwent a forensic interview and tested negative for pregnancy and sexually-transmitted diseases. Later in

January 2024, C.C.O. was moved to a placement in Sugarland, which, according to her caseworker "specializes in children coming from severe trauma that need . . . intensive therapy."

At the time of trial, C.C.O. still resided in Sugarland. According to the caseworker, this placement offered a ten-month treatment program, which was scheduled to end in November 2024. Further, according to the caseworker, C.C.O. had "definitely progressed" and become more respectful while placed in Sugarland. The caseworker testified that the Department wished for C.C.O. "to be stabilized enough to go with family," and the Department's plan remained reunification with Grandmother. According to C.C.O.'s caseworker, the Department sought termination so that Grandmother could adopt C.C.O. For her part, C.C.O. testified that she wished "to go home and have my dad come home." C.C.O. was adamant that she did not want Father's parental rights terminated, and she would only consent to Father or Grandmother adopting her.

After the parties rested, the jury was charged in the written charge of the court that, "This is a case for termination of parental rights." The jury was asked in Questions No. 1–3 whether, by clear and convincing evidence, Father committed actions satisfying the predicate grounds for termination: (1) whether Father knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); (2) whether Father engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child, *see id.* § 161.001(b)(1)(E); and (3) whether Father failed to comply with the provisions of a court order that specifically established the actions necessary for the return of the child who was removed from the parent for the abuse or neglect of the child, *see id.* § 161.001(b)(1)(O). The jury answered "Yes" to each of these questions. Having answered affirmatively, the jury proceeded to Question No. 4, which asked: "Do you find by clear and

convincing evidence that termination of the parent-child relationship between [Father] and the child is in the best interest of the child?" The jury answered, "Yes." Father did not object to the submission of Questions No. 1–4 to the jury.

Because the jury answered Question No. 4 affirmatively, it did not proceed to further questions concerning managing and possessory conservatorship of the child. Those further questions — which the jury charge instructed the jury not to reach upon giving affirmative answers to Questions No. 1–4 — provided opinions for the jury to select Father and/or the Department as C.C.O.'s managing or possessory conservator. Father proposed adding Grandmother as a possible selection, but the trial court denied Father's request.

After the jury gave its verdict, the trial court signed an order of termination conforming to the verdict. The trial court ordered termination of the parent-child relationship between Father and C.C.O., and it ordered the Department to be appointed permanent managing conservator of the child. At no time did Father file or otherwise urge a motion for instructed verdict, a motion for judgment notwithstanding the verdict, a motion to disregard the jury's answer to a vital fact question, or a motion for new trial. Only Father appealed.

**LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE**

In his first three issues, Father complains the evidence adduced at trial is legally and factually insufficient to support termination. Issue one concerns the jury's best-interest finding, and issues two and three concern the jury's findings as to the predicate grounds. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (b)(1)(E), (b)(1)(O), (b)(2). The Department responds that Father failed to preserve error. We agree and overrule Father's first three issues without reaching the merits.

**I. Applicable Law**

With trial by jury, a party may preserve a legal-sufficiency challenge in the trial court by: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *In re D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021). For a factually-sufficiency challenge following a jury trial, a party is required to file a motion for new trial to preserve error. TEX. R. CIV. P. 324(b)(2); *In re D.T.*, 625 S.W.3d at 75 n.8. Important prudential considerations underscore these rules on preservation. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). "Requiring parties to raise complaints at trial conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds." *Id.*; *cf.* TEX. R. APP. P. 33.1(a). With parental-termination cases, "allowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved, thus '[p]romot[ing] the child's interest in a final decision and thus placement in a safe and stable home.'" *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (quoting *In re B.L.D.*, 113 S.W.3d at 353).

Nevertheless, because parental-termination cases implicate fundamental liberties, these proceedings must comply with the requirements of procedural due process. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *In re B.L.D.*, 113 S.W.3d at 351–52. Procedural due process requires "fundamental fairness," which may require our review of unpreserved error. *See In re B.L.D.*, 113 S.W.3d at 352–55; *In re M.S.*, 115 S.W.3d 534, 550 (Tex. 2003); *see also Santosky*, 455 U.S. at 753; *In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002). Procedural due process "turns on a balancing of three distinct factors. . . : the private interests affected by the proceeding; the risk of error created

by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *In re J.F.C.*, 96 S.W.3d at 273 (citation and ellipsis omitted).

In two parental-termination appeals decided on the same day in 2003, the supreme court weighed and explained the relevant due process factors in detail. *See In re B.L.D.*, 113 S.W.3d at 352–354; *In re M.S.*, 115 S.W.3d at 547–549. With respect to factual sufficiency, it held, "that if appointed counsel unjustifiably fails to preserve a sufficiency challenge for appellate review, under some circumstances that failure could amount to a due process violation," requiring reversal. *In re B.L.D.*, 113 S.W.3d at 354 (citing *In re M.S.,* 115 S.W.3d at 548). Specifically, the supreme court instructed:

> [O]ur appellate courts must engage in a review using the established *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] standards. That is, the appellate court must indulge in the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," including the possibility that counsel's decision not to challenge factual sufficiency was based on strategy, or even because counsel, in his professional opinion, believed the evidence factually sufficient such that a motion for new trial was not warranted. As the Court of Criminal Appeals has stated, "[w]hen a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected." [*Smith v. State*, 17 S.W.3d 660, 662 (Tex. Crim. App. 2000).] In short, the courts must hold the parent's burden to show that "counsel's performance fell below an objective standard of reasonableness." [*Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).]

> The appellate courts must also conduct a review to determine whether counsel's defective performance caused harm; in other words, whether "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." [*Id.* at 440.] The appellate court will conduct such a review to determine harm as if factual sufficiency had been preserved, under our established factual sufficiency standard in parental-rights termination cases, understanding that the evidentiary burden in such cases is "clear and convincing." [*In re J.F.C.*, 96 S.W.3d at 264.]

> More to the point, if the court of appeals finds that the evidence to support termination was factually insufficient, and that counsel's failure to preserve a factual sufficiency complaint was unjustified and fell below being objectively reasonable, then it must hold that counsel's failure to preserve the factual sufficiency complaint by a motion for new trial constituted ineffective assistance

of counsel. In that case, the court of appeals should reverse the trial court's judgment, and remand the case for a new trial.

*In re M.S.*, 115 S.W.3d at 549–50 (footnotes omitted).

The supreme court "ha[s] not extended this rule to the preservation of 'no evidence' points." *In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005).[4] "A no-evidence challenge is a challenge to the legal sufficiency of the evidence." *Graves v. Graves*, 694 S.W.3d 814, 818 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (citing *See City of Keller v. Wilson*, 168 S.W.3d 802, 809–11 (Tex. 2005)); *see also Wolf v. Starr*, 617 S.W.3d 898, 903 (Tex. App.—El Paso 2020, no pet.) ("A legal sufficiency challenge is essentially a no-evidence standard[.]" (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (2004))). In declining to extend the rule, the supreme court held that a mother in a parental-termination appeal failed to preserve a "no-evidence" point because,

> [Mother] never alleged in either the court of appeals or in this Court that her counsel unjustifiably failed to preserve error; rather, she asserted the "no evidence" point without addressing the preservation issue. It is reasonable to presume that her counsel's decision not to raise a "no evidence" point was based either on litigation strategy or on her counsel's belief that, in his professional opinion, the evidence was legally sufficient and preservation of error was not warranted. *See* [*In re M.S.*, 115 S.W.3d] at 549. Accordingly, we hold that [Mother] did not demonstrate that her counsel unjustifiably failed to preserve a "no evidence" issue.

*In re J.P.B.*, 180 S.W.3d at 574. Thus, regardless of whether the preservation rule announced in *In re M.S.* could apply to a legal sufficiency challenge, when a parent fails to demonstrate that his or her counsel unjustifiably failed to preserve a legal sufficiency challenge, that challenge is not preserved. *See id.*; *cf. In re D.T.*, 625 S.W.3d at 75 (rejecting mother's ineffective-assistance-of-counsel argument that counsel was ineffective for failing to preserve mother's right to challenge

---

[4] The supreme court summarized its previous holding, which it described as a "rule," as follows: "that the court of appeals may review the factual sufficiency of the evidence in a parental termination case — even if a party failed to preserve error in the trial court — if the parent's counsel unjustifiably failed to preserve error." *In re J.P.B.*, 180 S.W.3d at 574.

legal or factual sufficiency of the evidence because mother failed to meet her burden to show counsel's performance fell below an objective standard of reasonableness).

In short, we must apply our error-preservation rules, but we may deviate from them if a parent demonstrates that his or her counsel's failure to preserve a factual sufficiency complaint was unjustified, *see In re M.S.*, 115 S.W.3d at 549–50, and we potentially may deviate from our error-preservation rules if a parent demonstrates that his or her counsel's failure to preserve a legal sufficiency complaint was unjustified, *see In re J.P.B.*, 180 S.W.3d at 574. Both of these exceptions incorporate the *Strickland* standard. *See In re M.S.*, 115 S.W.3d at 549; *In re J.P.B.*, 180 S.W.3d at 574.

## II. Discussion

Father did not preserve his legal and factual sufficiency challenges pursuant to our rules for error preservation. As to factual sufficiency, Father did not file or otherwise urge a motion for new trial. *See* TEX. R. CIV. P. 324(b)(2); *In re D.T.*, 625 S.W.3d at 75 n.8. As to legal sufficiency, Father did not file or otherwise urge a motion for instructed verdict, a motion for judgment notwithstanding the verdict, a motion to disregard the jury's answer to a vital fact issue, or a motion for new trial. *See In re D.T.*, 625 S.W.3d at 75 n.8. While Father objected to the trial court's failure to submit to the jury the choice of Grandmother as a managing or possessory conservator, he did not object to the submission of questions tracking the statutory prerequisites for termination pursuant to Texas Family Code section 161.001. *See id.*; *see also* TEX. FAM. CODE ANN. § 161.001(b). Accordingly, Father did not preserve his legal or factually sufficiency challenges unless we were to apply an exception to our error-preservation rules. *In re M.S.*, 115 S.W.3d at 549–50; *In re J.P.B.*, 180 S.W.3d at 574.

However, like the mother in *In re J.P.B.*, Father never alleged that his trial counsel unjustifiably failed to preserve error; he asserted his legal sufficiency point without addressing the preservation issue. *See In re J.P.B.*, 180 S.W.3d at 574.[5] Accordingly, as in *In re J.P.B.*, "[i]t is reasonable to presume that [Father's] counsel's decision not to raise a 'no evidence' point was based either on litigation strategy or on [his] counsel's belief that, in his professional opinion, the evidence was legally sufficient and preservation of error was not warranted." *Id.* (citing *In re M.S.*, 115 S.W.3d at 549).

This "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance," applies also to counsel's decision not to raise a factual sufficiency point. *In re M.S.*, 115 S.W.3d at 549 (quoting *Strickland*, 466 U.S. at 689). This presumption of reasonable professional assistance, includes "the possibility that counsel's decision not to challenge factual sufficiency was based on strategy, or even because counsel, in his professional opinion, believed the evidence was factually sufficient such that a motion for new trial was not warranted." *In re M.S.*, 115 S.W.3d at 549 (footnotes omitted). As here, "[w]hen a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected." *Id.* (quoting *Smith*, 17 S.W.3d at 662). Here, Father has not directed us to any matter which would rebut this presumption or otherwise carry his burden to show that counsel's performance fell below an objective standard of reasonableness. *See id.* (placing burden upon parent to establish that *Strickland* standard was met); *see also* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Moreover, the record does not suggest that Father was unrepresented at any critical junction. *Compare In re J.O.A.*, 283 S.W.3d 336, 343

---

[5] Father did not file a reply brief or otherwise address error preservation after the issue was raised by the Department in its brief.

(Tex. 2009) (holding presumption of reasonable professional assistance rebutted where deadline to file statement of points passed after trial counsel filed "his motion to withdraw and did nothing further," and appellate counsel was appointed later) *with In re D.T.*, 625 S.W.3d 62, 75 (Tex. 2021) (holding presumption of reasonable professional assistance supported by strength of case and fact that mother's appellate counsel was appointed two weeks before deadline to file post-judgment motions). As in *Smith v. State*, the case the supreme court quoted in *In re M.S.*, there is no evidence in the record to show "that trial counsel thought that his duties were completed with the end of trial, and had thereafter abandoned the appellant;" and "[t]here is nothing in the record to suggest that the attorney did not discuss the merits of a motion for a new trial with the appellant, which the appellant rejected." *Smith*, 17 S.W.3d at 662; *see In re M.S.*, 115 S.W.3d at 449.

In short, Father has not preserved legal and factual sufficiency issues for our review, and he has not argued or demonstrated that his counsel unjustifiably failed to preserve such issues. Consequently, Father has not preserved error or established a procedural due process violation, which could provide grounds for reversal. *See In re J.P.B.*, 180 S.W.3d at 574; *In re M.S.*, 115 S.W.3d at 549–50. We overrule Father's first three issues.

## JURY CHARGE

In Father's fourth issue, he contends the trial court erred by failing to submit Grandmother as a choice for managing or possessory conservator in the jury charge. Father provides no legal authority in his brief on this matter. *Cf.* TEX. R. APP. P. 38.1(i). The Department responds that the trial court did not abuse its discretion because the controlling question in this case was whether the relationship between Father and C.C.O. should be terminated.

We review a trial court's jury-charge rulings for abuse of discretion. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016); *see also In re C.P.*, No. 04-03-00790-

CV, 2004 WL 2346253, at \*2 (Tex. App.—San Antonio Oct. 20, 2004, no pet.) (mem. op.). "Erroneous rulings require reversal only if a review of the record reveals the error was harmful." *Sw. Energy Prod. Co.*, 491 S.W.3d at 728 (citing TEX. R. APP. P. 44.1). "Error in the omission of an issue is harmless when the findings of the jury in answer to other issues are sufficient to support the judgment." *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (citation omitted).

The jury charge instructed: "This is a case for termination of parental rights." Jury Questions No. 1–4 concerned whether the statutory bases for termination under Texas Family Code section 161.001(b) had been satisfied. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (b)(1)(E), (b)(1)(O), (b)(2); *see also* TEX. R. CIV. P. 277 (requiring separate submission of questions on individual statutory grounds and best-interest). Because the jury answered these questions affirmatively, it did not proceed further to questions concerning conservatorship. Later, the trial court ordered termination and named the Department as C.C.O.'s sole managing conservator.

Termination of the parent–child relationship divests the parent of all legal rights and duties with respect to the child. TEX. FAM. CODE ANN. § 161.206(b). "Former parents do not have standing to invoke the trial court's continuing jurisdiction over managing conservatorship issues." *In re Lambert*, 993 S.W.2d 123, 132 (Tex. App.—San Antonio 1999, orig. proceeding). Under Family Code section 161.207(a), once a trial court terminates the parent-child relationship with respect to both parents, the court must appoint a suitable competent adult, the Department, or a licensed child-placing agency as the child's managing conservator. TEX. FAM. CODE ANN. § 161.207(a).

Father has not established harm from the trial court's refusal to submit Grandmother as a choice for managing or possessory conservatorship in the jury charge because, given the jury's

affirmative findings regarding termination, the jury did not reach conservatorship questions, and the appointment of the Department as managing conservator "may be considered a consequence of the termination pursuant to Family Code section 161.207." *In re N.T.*, 474 S.W.3d 465, 480 (Tex. App.—Dallas 2015, no pet.) (citation omitted); *see also In re S.C.*, No. 02-18-00422-CV, 2019 WL 2455612, at *14 (Tex. App.—Fort Worth Jun. 13, 2019, pet. denied) (mem. op.) ("Even if the trial court did err by not allowing the jury the opportunity to resolve the conservatorship issue, which we do not hold, the jury properly would not have reached that issue because they terminated Father's rights.").

We hold Father has not shown harm from any jury-charge error, even if presumed. *See* TEX. R. APP. P. 44.1(a). Therefore, we overrule his fourth issue.

## EVIDENTIARY RULINGS

In his last issue, Father asserts the trial court erred by excluding an incident report related to C.C.O.'s runaway in January 2024, and by allowing hearsay testimony. The Department responds that Father did not preserve error regarding the incident report and that Father has not shown harm from the admission of any purported hearsay evidence.

### I. Applicable Law

Evidentiary decisions are committed to the trial court's sound discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d at 285. A trial court abuses its discretion when it acts without regard for guiding rules or principles. *U-Haul Int'l*, 380 S.W.3d at 132. Even if a trial court abuses its discretion on evidentiary matters, "reversal is only appropriate if the error was harmful, *i.e.*, it probably resulted in an improper judgment." *Id.*; *see* TEX. R. APP. P. 44.1(a). Reversible error does not usually occur in connection with evidentiary rulings "unless the whole case turns on the particular evidence admitted or excluded." *McEwen v.*

*Wal-Mart Stores, Inc.*, 975 S.W.2d 25, 29 (Tex. App.—San Antonio 1998, pet. denied). Error in the admission of evidence is harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *In re E.A.K.*, 192 S.W.3d 133, 148 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Pena v. Edwards Cnty.*, No. 04-09-00039-CV, 2009 WL 4669300, at *1 (Tex. App.—San Antonio Dec. 9, 2009, no pet.) (mem. op.).

"To preserve the error of a trial judge in excluding evidence, a party must: (1) attempt during the evidentiary portion of the trial to introduce the evidence; (2) if an objection is lodged, specify the purpose for which it is offered and give the trial judge reasons why the evidence is admissible; (3) obtain a ruling from the court; and (4) if the judge rules the evidence inadmissible, make a record, either by offer o[f] proof or through a formal bill of exception[], of the precise evidence the party desires admitted." *In re J.O.*, No. 04-07-00752-CV, 2008 WL 2037404, at *2 (Tex. App.—San Antonio May 14, 2008, no pet.) (mem. op.); *see also* TEX. R. APP. P. 33.1; *Matter of Marriage of Rangel & Tovias-Rangel*, 580 S.W.3d 675, 679–80 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

"Texas recognizes two types of offers to preserve error: the offer of proof (formerly referred to as an informal bill of exception) and the formal bill of exception." *Fletcher v. Minnesota Min. & Mfg. Co.*, 57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see* TEX. R. EVID. 103(a), (b); TEX. R. APP. P. 33.2. "An offer o[f] proof must be: (1) made before the court, the court reporter, and opposing counsel, but outside the presence of the jury; and (2) preserved in the reporter's record." *In re J.O.*, 2008 WL 2037404, at *2 (citing *In re Estate of Miller*, 243 S.W.3d 831, 837 (Tex. App.—Dallas 2008, no pet.); *see* TEX. R. EVID. 103(a)(2). "The rules of evidence do not mandate a 'formal' offer of proof; they require only a short, factual recitation of what the evidence would show to preserve the issue for appeal."

*Marriage of Rangel*, 580 S.W.3d at 680 (citation and brackets omitted). Nevertheless, the offer of proof must inform the court of the substance of the evidence unless the substance is apparent from the context. TEX. R. EVID. 103(a)(2). The offer must include "the meat of the actual evidence" rather than a general, cursory summary, so that the appellate court can meaningfully assess whether the exclusion of the evidence was erroneous and harmful. *Mays v. State*, 285 S.W.3d 884, 890–91 (Tex. Crim. App. 2009); *see Marriage of Rangel*, 580 S.W.3d at 680. "While the reviewing court may sometimes be able to discern from the record the general nature of the evidence and the propriety of the trial court's ruling, it cannot, without an offer of proof, determine whether exclusion of the evidence was harmful." *Bank of Am., N.A. v. Ochuwa*, No. 01-19-00368-CV, 2020 WL 5269416, at *4 (Tex. App.—Houston [1st Dist.] Sept. 3, 2020, no pet.) (mem. op.); *see also In re M.G.N.*, 491 S.W.3d 386, 399 (Tex. App.—San Antonio 2016, pet. denied) ("Without an offer of proof, an appellate court cannot make a determination whether the trial court committed reversible error.").

When there is no offer of proof made before the trial court, the party must introduce the excluded evidence into the record by a formal bill of exception. *See* TEX. R. APP. P. 33.2; *In re J.O.*, 2008 WL 2037404, at *2. "A formal bill of exception must be presented to the trial court for its approval, and, if the parties agree to the contents of the bill, the trial court must sign the bill and file it with the trial court clerk." *Marriage of Rangel*, 580 S.W.3d at 680 n.3; *see* TEX. R. APP. P. 33.2(c). If the parties do not agree, the appellate rules provide a procedure for presenting competing bills for the appellate court's resolution. *See* TEX. R. APP. P. 33.2(c).

**II. Discussion**

Father did not respond to the Department's error-preservation argument. In his brief, he directs us to several pages in the reporter's record and an incident report in the clerk's record.[6] The selection from the reporter's record begins with C.C.O.'s ad litem attorney announcing to the trial court, "Your Honor, I've got two sets of incident reports from the placements, and I think it goes directly to whether Belong is making smart choices about where to put her and who is caring for her."[7] Counsel then explained that Belong is a corporate entity and a Department contractor that employs caseworkers. The ad litem also explained that Belong shares a corporate parent with several of C.C.O.'s past placements. In other words, Belong and the placements were subsidiaries of the same corporate parent. The rest of the selection concerns whether the Department's caseworker, as a Belong employee, could authenticate incident reports made by employees of C.C.O.'s past placements, based on the shared corporate parent. At the conclusion of testimony and discussion on this matter, the trial court sustained the Department's objection to the introduction of the incident reports on authentication grounds.

The ad litem never explicitly offered the incident reports to the trial court for admission, and there are no incident reports in the reporter's record, as proposed exhibits or otherwise. Instead, in his briefing, Father directs us to an incident report attached to a filing he made with the trial court clerk two months before trial, entitled "Objection to Motion for Authorization to Place Child and Request for Referral to Licensing."

---

[6] While Father asserts error with some specificity, he asserts harm from the exclusion of the incident reports only in a conclusory fashion, without reference to record or legal citations. *Cf.* TEX. R. APP. P. 38.1(i); *In re S.N.P.*, No. 04-20-00372-CV, 2020 WL 7365445, at *4, n.1 (Tex. App.—San Antonio Dec. 16, 2020, pet. denied) (holding issue waived due to inadequate briefing) (mem. op.); *In re R.L.L.*, No. 04-18-00240-CV, 2018 WL 6069866, at *5 n.5 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (mem. op.) (declining to perform independent record review and relying only on record citations).

[7] At trial, the ad litem referenced two incident reports, but Father's appellate brief discusses only a single report. The exact number of reports — whether one or two — is immaterial to our analysis.

As the complaining party on appeal, it is Father's burden to present a sufficient appellate record to establish error requiring reversal. *In re J.O.*, 2008 WL 2037404, at *2. From the trial transcript, it is clear that C.C.O.'s ad litem attorney attempted to offer incident reports into evidence. The attorney identified the proposed evidence as incident reports from C.C.O.'s placements, and the attorney argued generally that the reports "go[] directly to whether Belong is making smart choices about where to put [C.C.O.] and who is caring for her." However, the ad litem never formally offered the reports for admission into evidence, and she never stated the factual substance of the incident reports, only their general nature. Nor did she elicit this information from the caseworker. Instead, the caseworker could not answer whether the document the ad litem showed her had been altered from the incident reports the caseworker had received from C.C.O.'s placements. The trial court excluded the incident reports on authentication grounds. *See Darby v. Darby*, No. 12-06-00340-CV, 2008 WL 2043031, at *3 (Tex. App.—Tyler May 14, 2008, no pet.) (mem. op.) (determining trial court "impliedly excluded evidence," although evidence was never formally offered or excluded).

From this record, we may "be able to discern . . . the general nature of the evidence and the propriety of the trial court's ruling." *Bank of Am.*, 2020 WL 5269416, at *4. However, critically, we cannot discern the factual substance of the excluded evidence to "determine whether exclusion of the evidence was harmful." *Id.*; *see Mays*, 285 S.W.3d at 891 (explaining summary of evidence, "in the most general and cursory terms, without any of the meat of the actual evidence, will not suffice to preserve error"); *In re A.M.*, 418 S.W.3d 830, 840 (Tex. App.—Dallas 2013, no pet.) ("Comments on the reasons for the testimony or why the testimony is admissible are insufficient; the proponent must describe the actual content of the testimony."). Whether an oversight or not, the incident reports were not included in the reporter's record, which could have revealed their

substance. *See In re J.O.*, 2008 WL 2037404, at *2 ("An offer o[f] proof must be . . . preserved in the reporter's record."); *see also In re M.G.N.*, 491 S.W.3d at 386 (holding party failed to preserve error where party's attorney stated desire to introduce evidence; however, actual documents were neither tendered to court reporter nor made part of offer of proof, and offer of proof did not describe "*with sufficient specificity*" contents of documents). Nor does the clerk's record include a bill of exception. While Father cites to an incident report attached to his pre-trial filing in the clerk's record, he has not directed us to any authority to suggest that this filing could preserve error. *Cf.* TEX. R. APP. P. 38.1(i). Generally, filing a document with the trial court clerk alone does not preserve error because a bill of exception must comply with applicable rules. *See* TEX. R. APP. P. 33.2; *see also Bank of Am.*, 2020 WL 5269416, at *4 n.3 (noting motion for new trial did not preserve error related to exclusion of evidence); *In re J.O.*, 2008 WL 2037404, at *2 (holding error not preserved where designation of record, sworn statements, and post-trial offer of proof did not comply with bill-of-exception requirements).[8]

We hold Father did not preserve error as to the exclusion of the incident reports from evidence because neither he nor C.C.O., through her ad litem attorney, made an offer of proof or filed a formal bill of exception. *See* TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.2; *In re J.O.*, 2008 WL 2037404, at *2. Accordingly, we overrule Father's evidentiary challenge as to the incident reports, without reaching the merits.[9]

---

[8] In the only two cases we have located that allowed for a pre-trial filing in the clerk's record to preserve error, (1) the substance of the excluded evidence was apparent from the clerk's record and discussion in the reporter's record, and (2) it was apparent from the reporter's record that the substance was known by the trial court. *See Emami v. Emami*, No. 02-21-00319-CV, 2022 WL 3273603, at *3 (Tex. App.—Fort Worth Aug. 11, 2022, no pet.) (mem. op.) (finding error preserved where affidavit attached to motion to revoke settlement agreement stated excluded witness's intended testimony and trial court's statements on the record suggested it had reviewed affidavit); *Turner v. Peril*, 50 S.W.3d 742, 745 (Tex. App.—Dallas 2001, pet. denied) (emphasizing "limited nature" of holding that error was preserved related to the exclusion of affidavits filed pursuant to Texas Civil Practice and Remedies Code section 18.001 where reporter's record showed trial court had read affidavits). Here, neither is the case.

[9] Arguably, the requirements of procedural due process could allow for review of the merits despite error-preservation rules. However, as the supreme court explained in *In re M.S.*, the relevant analysis incorporates the *Strickland*

By his final issue, Father also challenges the admission of hearsay testimony. Father complains about testimony from a Department caseworker about what Father purportedly told another Department caseworker who visited Father. The caseworker testified — based on the information she received from the other caseworker — that Father denied C.C.O. was at fault for altercations between C.C.O. and Grandmother and that Father did not want C.C.O. to receive any medication. Father also complains about a Department caseworker testifying as to C.C.O.'s psychological diagnoses, although the caseworker did not diagnose C.C.O. herself. Father does not assert or argue that any error from the admission of this testimony probably resulted in an improper judgment. *See* Tex. R. App. P. 44.1(a); *cf. id.* R. 38.1(i). The Department observes, in its brief, that similar evidence was introduced elsewhere without objection. *See Pena*, 2009 WL 4669300, at *1 ("Error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection."). Regarding, physical altercations between C.C.O. and Grandmother, Father testified, "I don't think anybody is hitting anybody." As to C.C.O.'s medication, Father testified, "I don't think kids should get medications unless absolutely necessary." Finally, as to the diagnoses, while no witness specified C.C.O.'s diagnoses as clearly as the caseworker, C.C.O.'s mental and emotional needs were a focus during the trial. C.C.O.'s prior therapist testified regarding her treatment of C.C.O.'s trauma and that C.C.O. functioned at a lower age level; C.C.O. testified as

---

standard. *See In re M.S.*, 115 S.W.3d at 545, 549–50. To satisfy the *Strickland* standard, a party must show both (1) that counsel's performance was so deficient and contained such serious errors that the attorney was not functioning as counsel, and (2) that the deficient performance prejudiced the party's defense to such a degree that the party was deprived of a fair trial. *Strickland,* 466 U.S. at 687; *In re M.S.*, 115 S.W.3d at 545. Here, for the reasons just discussed, the record precludes our review of the substance of the excluded incident reports because they were not made part of the trial record or filed in the clerk's record in compliance with procedural rules. Consequently, without the excluded evidence, we cannot determine whether exclusion of the evidence was harmful, either in our review of the evidentiary issue or in a review under the second *Strickland* prong. *Cf. In re A.L.*, No. 04-17-00620-CV, 2018 WL 987484, at *8 (Tex. App.—San Antonio Feb. 21, 2018, no pet.) (mem. op.) ("The 'record' requirement established in *Strickland* also applies to parental-rights termination cases.").

to her therapy at the time of trial, which included anger management; and multiple witnesses, including Grandmother, testified concerning C.C.O.'s behavior and defiance of authority. We overrule Father's evidentiary issue as to the admission of hearsay testimony because Father has not established harm, and the same evidence was admitted elsewhere without objection. *See* TEX. R. APP. P. 38.1(i), 44.1(a); *McEwen*, 975 S.W.2d at 29.

## CONCLUSION

We affirm the trial court's order of termination.

Rebeca C. Martinez, Chief Justice